**David A. KINDEM, Plaintiff,**

v.

**CITY OF ALAMEDA, a municipal corporation, Defendant.**

**No. C–78–2982 SW.**

United States District Court, N. D. California.

Nov. 11, 1980.

---

Kenneth Hecht, Penny Nakatsu, Chris Redburn, San Francisco, Cal., Bernice Lapow, Legal Aid Society of Alameda County, Oakland, Cal., for plaintiff.

Carter Stroud, City Atty., Alameda, Cal., for defendant City of Alameda.

## MEMORANDUM OF DECISION AND ORDER

SPENCER WILLIAMS, District Judge.

In 1968, plaintiff David A. Kindem was convicted as a minor under the Federal Youth Corrections Act, 18 U.S.C. §§ 5001–37, of felony violation of the now repealed federal marijuana importation tax laws, formerly codified at 26 U.S.C. § 4755. One decade later, plaintiff was fired from his job as a janitor with defendant City of Alameda ("the City") when his ten-year-old conviction was brought to the attention of his superiors. Plaintiff brought the present action under the Civil Rights Act of 1871, 42 U.S.C. § 1983, to challenge the constitutionality of the City's long-standing written ban against municipal employment of ex-felons. He claims the dismissal violated due process and equal protection rights secured to him by the United States Constitution.[1]

After the initial pleadings were filed, the parties filed cross-motions for summary judgment. Following oral argument on the matter, the court determined no material issues of fact were in dispute and summary judgment in favor of plaintiff was granted. The City was ordered to reinstate plaintiff and was enjoined from enforcing the offending portion of the City Charter. The court reserved for later decision the question of plaintiff's entitlement to backpay, but now rules he is entitled to such compensation in the amount of $9,433.90. Finally, pursuant to 42 U.S.C. § 1988, the court awards plaintiff's counsel a reasonable attorney's fee, in the amount of $7541.00.

By this Memorandum of Decision and Order, the court expresses the reasons for granting plaintiff's motion for summary judgment and the reasons for awarding backpay and for setting attorney's fees at $7541.00, and reduces to written form the rulings on backpay and attorney's fees.

## I.

## PLAINTIFF'S SUMMARY JUDGMENT MOTION

### A. *Factual Background*

The facts may be stated quite briefly. In September, 1977, plaintiff began work as a janitor for the City of Alameda under its CETA employment program. Shortly after the job began, plaintiff was requested to undergo a standard security check. At that time, plaintiff informed his immediate superiors about his 1968 felony conviction.[2] Section 22–4 of the City Charter provides: "No person who shall have been convicted of a felony ... shall ever hold any office or position of employment in the service of the City." Plaintiff's CETA director therefore contacted the City Attorney for an opinion on whether this section applied to plaintiff. Five and a half month later, plaintiff was told the policy applied to all felony convictions and all jobs. On March 2, 1978, plaintiff received a letter from the City Manager informing him his employment would ter-

---

1. Plaintiff also claims rights under the California Constitution were violated. Since federal law principles prove dispositive, the state constitutional issues need not be reached. They were, in any event, largely ignored by the parties.

2. There is, in fact, some dispute about the timing and propriety of the manner in which plaintiff informed his employers that he had been convicted of a felony. Plaintiff claims he was told when applying for the job that he need not list his youth offense conviction on the application form. Defendant points out that the job application form did not disclose the conviction, and has argued falsification as a possible alternate grounds for dismissal. This dispute is not relevant, however, because all are agreed the reason plaintiff was fired was the rule set forth in the Charter, and that plaintiff's failure to list his conviction on his initial application was not considered when he was terminated.

minate in one week. The letter stressed the fact the dismissal was no reflection on plaintiff or the work he had performed. In fact, the City Manager made it clear the City had been very pleased with plaintiff's work and attitude towards his job, and even reported receipt of several unsolicited calls from citizens commending plaintiff's work. The sole reason given for plaintiff's dismissal was the City's absolute prohibition against hiring ex-felons.

### B. *Legal Analysis*

The issue on the merits presented by plaintiff's action is not the wisdom of the City's policy, though many undoubtedly would find serious fault with it. Rather, the issue is whether the policy violates equal protection and due process rights protected by the Constitution. For although the court is sensitive to the need of local governments to fashion and implement employment policies without the fear of constant judicial intermeddling, the court also recognizes that local administrators and lawmakers, as well as the local electorate, sometimes do enact and implement policies which may transgress individual constitutional rights. Thus, although the City has a legitimate interest in securing a competent, trustworthy workforce, and ordinarily may do so by discriminating among applicants in a manner calculated to ensure only the most qualified are hired, it is subject to the same constitutional limitations applicable to governmental action at other levels.

The Supreme Court has rejected the idea that public employment is a "privilege" and therefore exempted from constitutional limitations. When the decisions or policies made regarding public employment involve impermissible discrimination or impair or deny certain protected rights, an individual applicant or employee properly may appeal to the courts for redress. Plaintiff's complaint raises important questions, questions meriting review of the City's policy.

### 1. *Equal Protection*

■ The City does not dispute plaintiff's claim that the questioned practice operates to the severe detriment of a distinct class of individuals. The policy is not directed at all applicants equally. Instead, the Charter provision singles out a particular group and totally bars them from municipal employment. Such classifications are subject to examination under the limitations imposed on local governments by the Equal Protection Clause of the fourteenth amendment.[3]

■ Analysis must begin with a determination of the applicable standard of review. A challenged classification is subjected to strict scrutiny only when a fundamental right is impaired or a suspect class is disadvantaged.[4] Public employment is not considered a fundamental right,[5] and ex-felons are not thought to constitute a suspect class.[6] Therefore, the City's policy must be tested according to a standard less rigorous than that employed when strictly scrutinizing a classification.

■ The rational basis test is a highly deferential standard of review. Under it, a court will not intercede on behalf of a discriminated class member unless it finds that the questioned classification is not rationally related to a legitimate state interest. Despite this low threshold, the court finds enforcement of the challenged City Charter section violated plaintiff's rights to equal protection of the laws. The court is unconvinced that the across-the-board ban on hiring ex-felons is reasonably related to any legitimate state goal. Because of this conclusion, it is not necessary to consider the

**3.** *New York Transit Authority v. Beazer*, 440 U.S. 568, 587–88, 99 S.Ct. 1355, 1366, 59 L.Ed.2d 587 (1979); *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978).

**4.** *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976).

**5.** *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 313, 96 S.Ct. 2562, 2566–67, 49 L.Ed.2d 520 (1976).

**6.** *Miller v. Carter*, 547 F.2d 1314, 1321 (7th Cir. 1977), *aff'd*, 434 U.S. 356, 98 S.Ct. 786, 54 L.Ed.2d 603 (1977) (per curiam); *Upshaw v. McNamara*, 435 F.2d 1188, 1190 (1st Cir. 1970).

possible application of some intermediate level of review.

The City unquestionably has a legitimate interest in hiring qualified, competent and trustworthy employees, and in employing persons who will inspire the public's confidence. But it has not been demonstrated that the sole fact of a single prior felony conviction renders an individual unfit for public employment, regardless of the type of crime committed or the type of job sought. This is not to say that a prior felony conviction can never be a factor in public employment decisions. It is reasonable to assume, for example, that a prior conviction might be highly relevant or properly determinative with respect to hiring decisions involving certain sensitive jobs.[7] It may also be reasonable to assume that convictions for certain crimes may indicate that an individual is unfit for any future municipal employment. But the City's policy is not tailored along any lines to conform to what might be considered legitimate government interests.[8]

Plaintiff's case illustrates but one way in which the City's policy is arbitrary and unreasonable. Clearly, plaintiff's ten-year-old youth conviction has little if any bearing on his ability to perform as a janitor for the City, and the City admits as much in its dismissal letter. Individual examples of inequitable hardships are rarely adequate to support the overturning of a classification on grounds of arbitrariness, but plaintiff's situation can hardly be considered a unique result of the full enforcement of the City's policy. Employment is denied to individuals, like plaintiff, who were convicted of felonies bearing no relationship whatsoever to the individual's honesty or his ability to work. Thus, whereas a felony tax evader is denied a janitorship, a person with a known proclivity for violence or thievery, even a person actually convicted of misdemeanor assault or theft, is not automatically precluded from the job although his personal traits and even his previous misdemeanor convictions might reasonably be considered related to the opportunities and temptations presented by a janitorship. The distinction thus drawn between ex-felons and nonfelons is not rationally related to any legitimate state interests.

Similar bans on employment of distinct groups have been overturned by courts in numerous other instances.[9] Even statutes which have tried to relate ex-felon status to a particular job have, on occasion, been struck down.[10] Cases cited by the City in defense of the Charter's classification scheme each involved a close nexus between the felony involved and the particular job sought, and are therefore inapposite.[11] The recent Supreme Court decision in *New York City Transit Authority v. Beazer*, 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979), also cited by the City, is distinguishable on a number of grounds: (1) the regulation in *Beazer*, which prohibited employment of all drug addicts by the Transit Authority, was not, itself, under attack, just its application to individuals who had successfully under-

---

7. *See, e. g., Upshaw v. McNamara*, 435 F.2d 1188, 1190 (1st Cir. 1970) (state law prohibiting appointment of felons to police force); *Carlyle v. Sitterson*, 438 F.Supp. 956, 963 (D.N.C.1975) (dismissal of fireman based on previous arson conviction).

8. *Cf. Butts v. Nichols*, 381 F.Supp. 573, 580–82 (S.D.Ia.1974) (three-judge district court) (discussing a similar across-the-board "felon ban").

9. *E. g., Thompson v. Gallagher*, 489 F.2d 443 (5th Cir. 1973) (veterans with less than an honorable discharge); *Scott v. Macy*, 349 F.2d 182 (D.C.Cir.1965) (homosexuals); *Davis v. Bucher*, 451 F.Supp. 791 (E.D.Penn.1978) (ex-drug addicts); *Duran v. City of Tampa*, 430 F.Supp. 75 (N.D.Fla.1977) (epileptics); *Butts v.*

*Nichols*, 381 F.Supp. 573 (S.D.Ia.1974) (three-judge district court) (felons).

10. *Miller v. Carter*, 547 F.2d 1314 (7th Cir. 1977), *aff'd*, 434 U.S. 356, 98 S.Ct. 786, 54 L.Ed.2d 603 (1977) (per curiam) (invalidating Chicago ordinance barring individuals convicted of certain offenses from obtaining public chauffeur's licenses); *Smith v. Fussenich*, 440 F.Supp. 1077 (D.Conn.1977) (invalidating a state statute which barred ex-felons from registering to work as private detectives or security guards).

11. *Upshaw v. McNamara*, 435 F.2d 1188, 1190 (1st Cir. 1970); *Carlyle v. Sitterson*, 438 F.Supp. 956 (D.N.C.1975); *Olson v. Murphy*, 428 F.Supp. 1057 (W.D.Penn.1977).

gone a year of methadone treatment, and the Court was thus faced with nothing more than a request to fine tune the regulatory classification; (2) the regulation itself was based on a legitimate concern for public safety and efficient operation of the system; and (3) the classification only covered current users of methadone, so that a person was not necessarily forever barred from employment with the System since eligibility returned once he was no longer using methadone.

The permanent and automatic disability which the City Charter makes out of a felony conviction, without any attempt to fit the classification to the legitimate governmental interests implicated in municipal employment decisions, amounts to a violation of the Equal Protection Clause.

## 2. Due Process

Plaintiff's contention under the Due Process Clause of the fourteenth amendment is that he has been denied substantive due process. In response, the City has argued plaintiff had no liberty or property interest impaired, and therefore could suffer no deprivation of substantive due process.

■ The substantive aspect of due process protects individuals from arbitrary or irrational action on the part of the state. Whether one must plead deprivation or impairment of a property interest to have standing to challenge governmental action as arbitrary remains an unsettled question. The First and Fifth Circuits have decided the fourteenth amendment provides an independent right to demand that govern-

ment act in a nonarbitrary manner at all times, regardless of the presence or absence of a property or liberty interest.[12] The majority of appellate courts which have considered the question have, however, agreed with then Circuit Judge and now Justice John Paul Stevens, who concluded the "absence of any claim by the plaintiff that an interest in property or liberty has been impaired is a fatal defect in [a] substantive due process argument."[13] It is not necessary for this court to express an opinion on this difficult legal question, though, for plaintiff's termination did involve impairment of a constitutionally recognized liberty interest.

■ Plaintiff was not fired because of incompetence or an inability to get along with coworkers.[14] The sole reason given for the termination was plaintiff's earlier conviction. In spite of the praise given plaintiff's performance in the termination letter, the circumstances of plaintiff's firing and the reason given for the action call into question plaintiff's fitness for employment, particularly with respect to the important traits of honesty, loyalty and morality. Coupled with the stigma is plaintiff's absolute foreclosure from working for the City in which he resides. In these circumstances, a liberty interest has been impaired.[15]

■ When a liberty interest is impaired by the arbitrary action of government, the constitutional guarantee of due process has been violated. As discussed above during consideration of plaintiff's equal protection claim, the classification which resulted in his termination is legally irrational, as it is not sufficiently keyed to any legitimate

---

**12.** *Thompson v. Gallagher,* 489 F.2d 443, 446–47 (5th Cir. 1974); *Drown v. Portsmouth School Dist.,* 451 F.2d 1106, 1108 (1st Cir. 1971).

**13.** *Jeffries v. Turkey Run Consolidated School Dist.,* 492 F.2d 1, 4 (7th Cir. 1974). *Accord, Clark v. Whiting,* 607 F.2d 634, 641 n. 17 (4th Cir. 1976); *Sullivan v. Brown,* 544 F.2d 279, 282 (6th Cir. 1976); *Weathers v. West Yuma County School Dist. R-J-I,* 530 F.2d 1335, 1340–41 (10th Cir. 1976); *Buhr v. Buffalo Public School Dist. No. 38,* 509 F.2d 1196, 1202–03 (8th Cir. 1974).

**14.** *See Stretten v. Wadsworth Hospital,* 537 F.2d 361, 365–66 (9th Cir. 1976).

**15.** In reaching this legal conclusion, the court has considered and been guided by, among others, the following important or well reasoned due process cases: *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Larry v. Lawler,* 605 F.2d 954 (7th Cir. 1979); *Stretten v. Wadsworth Hospital,* 537 F.2d 361 (9th Cir. 1976).

state interests. The impairment of plaintiff's liberty interest pursuant to such a policy violated his substantive due process rights.

Before leaving the subject of substantive due process, brief treatment should be given another of plaintiff's arguments. Is it an unconstitutional deprivation of substantive due process for the City to erect an irrebuttable presumption against a person's fitness for employment on the basis of a past felony conviction, especially where the fact of the felony conviction may not reflect at all upon any of the qualifications the person would need to perform satisfactorily on the job? A long line of Supreme Court cases has invalidated irrebuttable presumptions denying persons important interests,[16] but the doctrine has been called into question and its current status is unclear.[17] The fear is that the irrebuttable presumption analysis has the potential for riding roughshod over a tremendous number of state classifications. On the other hand, it may be that, properly employed, the irrebuttable presumption analysis does not represent an ever-expanding universe, for the Supreme Court has applied it only where the private interests are very important and the governmental interests can be promoted without much difficulty in an individualized evaluation process. If such a limited irrebuttable presumption analysis survives, a strong argument can be made that its application to this case would be another route to a finding that substantive due process has been denied.[18] Since such a finding is already reached by examination of the absence of a rational connection between the classification scheme and the legitimate state interests, the court declines plaintiff's invitation to measure Section 22–4 against any irrebuttable presumption test.

## C. *Remedy*

In order to remedy the constitutional violations suffered by plaintiff, the City was ordered to reinstate him with full seniority rights and benefits. In addition, the City was ordered to make plaintiff whole for lost compensation, but upon reconsideration, the court decided an important issue requiring further briefing and study existed with respect to the City's possible limited immunity from damages awards under 42 U.S.C. § 1983.[19]

Because the offending Charter provision was found unconstitutional on its face as well as applied, the court prohibited the City from making employment decisions based on Section 22–4. Subsequently, though, the City requested the court to narrow its ruling. The first sentence of Section 22–4 provides, "Any person convicted of a felony or misconduct in office shall forfeit his office or position of employment." Upon the City's representation that this sentence refers only to wrongful conduct after the person has assumed municipal employment, the court removed it from the case. Plaintiff's conduct subjecting him to the ban on employment occurred many years before he was hired, so the first sentence has no application to his situation. Whether commission of a felony while employed by the City justifies automatic dismissal is a different question which need not be answered in the context of this case.

The second sentence of Section 22–4 applies not only to persons "convicted of a felony," but also to persons guilty of "misconduct in office."[20] Neither party ad-

---

16. *Turner v. Dep't of Employment Security*, 423 U.S. 44, 96 S.Ct. 249, 46 L.Ed.2d 181 (1975); *Cleveland Bd. of Education v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); *Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971).

17. *See deLaurier v. San Diego Unified School Dist.*, 588 F.2d 674, 683 n. 16 (9th Cir. 1978).

18. *Cf. Miller v. Carter*, 547 F.2d 1314, 1327-28 (7th Cir. 1977) (Campbell, J., concurring).

19. See section II of this opinion.

20. The City's interpretation of the phrase "in office" is that it modifies only "misconduct" and not "felony." Thus, *any* felony conviction would disqualify a person from employment with the City of Alameda, not just felonies connected with a person's government employment.

dressed the propriety of invalidating the second sentence with respect to persons guilty of misconduct in office, but the court has determined that its order shall not encompass this language. Plaintiff himself was not guilty of any misconduct in office, and although many of the same questions regarding imposition of an automatic disqualification based on past conduct which were relevant in this case might also be important considerations when judging the constitutionality of the "misconduct in office" portion of the section, there may be other reasons why such a prohibition might be justified which were not relevant to the ban on hiring ex-felons. The court therefore expresses no opinion on the constitutionality of the policy with respect to persons guilty of past misconduct in office.

## II.

## BACKPAY

■ Defendant opposed plaintiff's request for an award of backpay by arguing it was entitled to immunity under 42 U.S.C. § 1983. The exact contours of such an immunity, and even the existence of any immunity at all, were considered by the court to be important and complicated questions with possibly far-reaching implications. While plaintiff's request was pending before this court, the Supreme Court issued its opinion in *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), in which it held municipalities enjoyed no immunity from damages awarded pursuant to section 1983. *Owen* provides a definitive answer to the questions presented by plaintiff's request in the instant action. Inasmuch as the court has previously established that the proper amount of any backpay award in this case would be $9,433.90, that sum shall be paid to plaintiff.

## III.

## ATTORNEY'S FEES

The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, permits the court to award attorney's fees to the prevailing party in a civil rights case such as this one. There is no question who prevailed in this action, and the City does not contest plaintiff's right to an attorney's fees award. The appropriate size of a reasonable attorney's fee in this case, however, is a very hotly contested matter. Plaintiff has requested compensation for 183.15 hours of attorney time, and seeks an award equal to $22,452.00. Defendant, though not suggesting any specific dollar amount, has vigorously objected to the award plaintiff requests and goes so far as to suggest that an award of $5,000.00 might be excessive.

■ In setting a reasonable attorney's fee under section 1988, the court is guided by the criteria enumerated in the well known case of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[21] In applying those criteria, the court first considers the hours worked, establishes an appropriate hourly wage, calculates a base or "lodestar" attorney's fee, and then adjusts the fee, if adjustment is called for, either up or down to reach the ultimate award.

### A. *Hours Worked*

■ Plaintiff reports three attorneys worked on his case, Penny Nakatsu the lead attorney, Kenneth Hecht the director of the Employment Law Center, and Bernice Lapow. Plaintiff claims 125.8 hours for Nakatsu, 15.8 hours for Hecht, and 41.55 hours for Lapow. The court has decided certain hours claimed will not be allowed, and has found the appropriateness of certain other hours claimed to be questionable.

Plaintiff seeks compensation for 41.2 hours of time allegedly spent by attorney Nakatsu between March 21 and May 25, 1978 processing his claim at the administrative level with the Department of Labor. The nature of these proceedings has not been made clear to the court. In fact, the court is aware of no reference to administrative hearings being made in this case

---

**21.** *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975).

prior to the filing of plaintiff's motion for attorney's fees. It does not appear why administrative remedies were pursued, what was accomplished at that stage, or why attorney time spent in that endeavor should be compensated. The breakdown of time spent in prelitigation efforts is anything but detailed, and the court has no way of judging whether time was spent on unnecessary, frivolous or duplicative activity which should not be compensated at normal rates for attorneys. The failure to be more specific is of particular concern regarding administrative proceedings which, unlike the actual litigation of this case, took place outside the direct observation and participation of this court. Therefore, without reaching the question of plaintiff's legal right to any fees award for prelitigation administrative proceedings, the court has determined not to award compensation for the 41.2 hours claimed for Nakatsu's work on plaintiff's behalf at that level.

Plaintiff claims .5 hour of compensable time was expended by attorney Lapow preparing the affidavit she filed in connection with the fees motion itself. Plaintiff has not cited any law justifying such an award, and the court is not aware of any authority which would persuade it to do so. Therefore, .5 hour of the time claimed for attorney Lapow shall be disallowed.

Nakatsu's affidavit alleges two hours of compensable time for a court appearance on August 23, 1979 and two more hours on August 24, 1979. There were, however, no court appearances on either of those days, and the four hours claimed are disallowed accordingly.

In addition to the hours the court has decided to disallow, the court must raise questions about the necessity for many of the other hours claimed. For example, Hecht's affidavit shows one hour devoted to preparing Nakatsu, an attorney with five and a half years' experience, for a status conference. Nakatsu's affidavit also lists that hour of consultation, and Nakatsu and Lapow each list an hour to attend the conference. Yet, the only matters discussed at

the conference were the possible need for narrowing the court's original order invalidating Section 22–4 and selection of a further hearing date. It is surprising, to say the least, that three attorneys "bring[ing] almost three decades of legal experience in civil rights litigation to bear on this case" [22] were required to expend four hours on such relatively routine affairs. Plaintiff, however, would have the court compensate his attorneys with fees in excess of $500.00 for these efforts.

As another example, plaintiff claims 2.3 hours for Nakatsu and 2.0 hours for Hecht in preparing his Memorandum in Opposition to Defendant's Motion to Set Aside Order and in Support of an Award of Back Pay. That Memorandum is no more than four and a half pages long including the half-page caption, is partially devoted to simple procedural arguments under the Local Rules of this court, discusses but two cases in opposition to defendant's motion, and devotes only one page to the complex issue of possible municipal immunity from damages under section 1983 which eventually became the subject of the lengthy Supreme Court decision in *Owen*. Due to the inadequacy of the treatment of the issue of municipal immunity, the court had to request further briefing and conduct a further hearing. Yet, plaintiff seeks to have his attorneys awarded $576.00 for preparing this short, simple and insufficient document.

There are other instances of claimed hours which indicate considerable inefficiency and likely duplication of effort, but it would serve no useful purpose to detail them here. Though the court has the power to disallow compensation for time spent unnecessarily by plaintiff's attorneys, the better way to handle the matter in this case is to accept the total number of hours claimed, but consider the apparent inefficiency when determining a possible multiplier.

### B. *Lodestar Fee*

Based on fees allegedly commanded by other attorneys of equivalent experience,

---

**22.** Plaintiff's Memorandum in Support of Motion for Attorney's Fees at 6, lines 17–18.

expertise and reputation in this community in cases of similar difficulty and contingency, plaintiff seeks compensation for Hecht at $100.00 per hour, and for Nakatsu and Lapow at $80.00 per hour. The court is willing to accept these figures as comparable to hourly rates charged and allowed in similar cases in this district.

## C. *Multiplier*

Plaintiff argues the difficulty of the legal issues presented by this case, the risk of this litigation, the dispatch with which the case was brought to a successful resolution, and the quality of his attorneys' work justifies applying a multiplier of 1.5 to the lodestar fee. The court agrees a multiplier should be applied, but concludes it should be a reverse multiplier reducing the amount actually awarded from the lodestar figure.

It is true, the constitutional issues involved in this case were not particularly easy or straightforward. Plaintiff's lawyers, though, are specialists in this area of the law, and it would be inappropriate to apply a multiplier based on any but unusually difficult legal questions. The only issue of such complexity was the question of possible municipal immunity from damages awards under 42 U.S.C. § 1983. As discussed above, plaintiff's attorneys' initial treatment of this issue was wholly inadequate. Subsequent filings on the point were considerably more helpful, but not sufficiently so that the court is persuaded to extend special credit for having to tackle this novel and, at the time, unsettled question.

The risk of litigation cannot be considered exceedingly great. The Charter provision was plainly unconstitutional, and, additionally, plaintiff's case presented one of the most sympathetic set of facts imaginable: a janitor so good the City actually received unsolicited letters of praise, but fired him anyway because its Charter left no choice even though his felony conviction was ten years old and had resulted from his prosecution as a minor under a now-repealed federal tax statute.

The completeness of plaintiff's victory does not merit a multiplier. Once Section 22–4 was found unconstitutional, plaintiff's reinstatement became the obvious remedy. As for the eventual award of back pay, the Supreme Court in *Owen* and not plaintiff's briefing was responsible. This case was indeed handled with relative speed by the attorneys, but as there were no material facts at issue, an early resolution was not unusual. In fact, defendant's motion to dismiss or for summary judgment was on file before plaintiff moved for any immediate relief. The speed with which the municipal immunity issue was resolved might have been increased had plaintiff's attorneys prepared briefs more commensurate with the importance of the issue involved.

Finally, the most compelling factor is the quality of the work done by plaintiff's attorneys. The level of skill necessary to prosecute this action did not, in this court's opinion, require $100.00 and $80.00 per hour lawyers to spend over 138 hours.[23] The only conclusion the court is able to draw is that plaintiff's attorneys were either seriously inefficient or simply enjoyed working on the rather interesting constitutional questions raised by this action. Either way, it would be unfair to tax defendant with the cost, at the prevailing rate, for all the hours spent on this case.

The court has scrutinized plaintiff's supporting papers very carefully. With the relevant factors set forth by *Johnson* in mind, the court has concluded that application of a reverse multiplier of one third would result in an attorney's fee that is fair and reasonable.

## D. *Calculation of the Award*

Total hours allowed at the lodestar rate of $100.00 amount to 15.8, the hours claimed for Hecht. Total hours allowed at the lodestar rate of $80.00 per hour amount to 121.65, 80.6 for Nakatsu and 41.05 for Lapow. The lodestar fee equals $11,632.00.

---

**23.** Of the 183.15 hours claimed, the court has disallowed 45.7 in section III(A) above.

The award, rounded to the nearest dollar, shall therefore be $7541.00.[24]

IT IS SO ORDERED.

---

24. At a hearing held in this matter September 24, 1980, the court announced the award of attorney's fees would be $7755.00. This figure was the product of an erroneous calculation, and should be disregarded.