Barry C. HIXON

v.

John DURBIN, et al.

Civ. A. No. 82-708.

United States District Court, E. D. Pennsylvania.

July 27, 1982.

---

Harold R. Berk, Philadelphia, Pa., Mark P. Widoff, Camp Hill, Pa., for plaintiff.

John P. Krill, Deputy Gen. Counsel, Harrisburg, Pa., for Bartle & Waldman.

John G. Knorr, III, Deputy Atty. Gen., Harrisburg, Pa., for Durbin & Heddinger.

## MEMORANDUM

NEWCOMER, District Judge.

Defendants in this civil rights action, which arose out of a dispute over a state employment contract, have raised a number of jurisdictional challenges to the complaint. Before me now are the motion of defendants Harvey Bartle III and Jay Waldman to dismiss the complaint pursuant to Rule 12(b)(6) and the motion of defendants Fred Heddinger and John Durbin for partial judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Plaintiff Barry Hixon claims that the actions of all defendants in this case deprived him of his rights, embodied in two employment contracts, to serve as financial consultant to the Pennsylvania Public School Employees' Retirement Board (the "Board"), an independent state agency. He charges that defendants Bartle (then Acting Attorney General) and Waldman (General Counsel), who refused to approve these contracts, conspired to interfere with his liberty and property interests in these contracts in violation of his rights to procedural and substantive due process guaranteed by the 14th Amendment to the United States Constitution and 42 U.S.C. § 1985. Plaintiff also charges that their actions defamed him and violated his contractual, privacy and liberty rights protected under state law. For the reasons set forth below, the motion of defendants Bartle and Waldman to dismiss the complaint is granted as to the substantive due process, irrebuttable presumption, and conspiracy Counts (Com-

plaint, Counts II, III and IV) and denied as to the procedural due process and state law Counts (Complaint, Counts I, V–XI).

Plaintiff also alleges that defendants Durbin (former Deputy State Treasurer) and Heddinger (ex-Board member) conspired to violate his civil rights, in violation of 42 U.S.C. § 1985, and that they conspired with Bartle and Waldman to violate various state law rights. For the reasons given below, Durbin's and Heddinger's motion for partial judgment on the pleadings is granted in part, as unopposed, and the remainder of the complaint against these two defendants is dismissed for lack of jurisdiction, with leave to amend so as properly to plead diversity jurisdiction.

On June 15, 1978, the Board signed a two year contract with Barry Hixon under which Hixon was to provide full-time professional service as a financial consultant in return for $46,000 a year (Contract 1). On September 7, 1979 and May 25, 1980, the Board voted to enter a new two-year contract with Hixon at the increased compensation of $58,500 per year. The contract (Contract 2) was submitted to the Office of the Attorney General for approval as to form and legality as required by the then-applicable regulations, 37 Pa.Admin.Code § 161.12 (Shepard's 1982). Defendant Bartle, then Acting Attorney General, refused to approve the contract, citing as his reason an eighteen-year old criminal conviction which Hixon had failed to report on the application form he filled out prior to signing Contract 1 in 1978. The information upon which Bartle relied was obtained, the complaint alleges, from defendant Durbin, then Deputy State Treasurer, who used a State Treasury investigator to examine Hixon's past. The letter in which Bartle set forth his reasons for refusing to approve the contract was immediately released to the press. Efforts by James Killian, Chairman of the Board, to induce Bartle to rescind his decision proved unavailing.

In 1981, the law governing responsibility for approving state contracts was changed. By the terms of the new Pennsylvania Commonwealth Attorneys' Act, Pa.Stat.Ann. tit. 71 § 732–301(11) (Purdon Supp.1981) (effective Jan. 20, 1981), the new General Counsel to the Governor, defendant Waldman, became the officer responsible for approving the relevant contracts. The Board, after considerable debate, again voted to approve a two-year contract with Hixon (Contract 3) dated April 1, 1981, for compensation of $58,500 per year. On April 14, 1981, Waldman refused to approve the contract, citing Bartle's letter and additionally referring to certain revelations by State Senator Edward L. Howard which bore upon Hixon's competence as a financial manager. He also noted the disapproval of Hixon's appointment voiced by interested private professional associations. This letter, too, was released to the press.

The complaint further charges that these actions by the Acting Attorney General and the General Counsel were coordinated and furthered by defendant Heddinger, a Board member, because Heddinger disapproved of Hixon's reform recommendations and opposed their implementation.

Hixon accordingly filed suit on February 17, 1982, alleging that defendants Bartle and Waldman deprived him of his liberty and property interests in his contract with the state in violation of the procedural and substantive due process guarantees of the 14th Amendment, and 42 U.S.C. § 1983; that all defendants conspired to deprive him of these rights in violation of 42 U.S.C. § 1985 and that the actions of all defendants violated the state constitution, Pa. Const. Art. I, §§ 1 and 26, and state common law by defaming him, interfering with his prospective contractual relations, invading his privacy, and inflicting emotional distress.

*Defendants Durbin and Heddinger*

Defendants Durbin and Heddinger move for partial judgment on the pleadings as to plaintiff's claim under 42 U.S.C. § 1985 (Count IV) and his state-law claim that defendants committed the tort of "official oppression" (Count X). Their motion as to Count IV is granted as unopposed (Plaintiff's Answer to Motion for Partial Judgment on the Pleadings at 7). Because the

elimination of this Count leaves no basis for federal jurisdiction over the subject matter of the complaint against Durbin and Heddinger as it is currently framed, it is dismissed in its entirety. However, as it appears that plaintiff may be able to invoke this Court's diversity jurisdiction, plaintiff is granted leave to file an amended complaint.[1]

With the dismissal of the claim under 42 U.S.C. § 1985, there is no longer a basis for federal question jurisdiction over defendants Durbin and Heddinger. Similarly, there is no basis for extending pendent jurisdiction to Durbin and Heddinger simply because the state law claims against them and the federal law claims against the other two defendants stem from the same factual situation. *Aldinger v. Howard*, 427 U.S. 1, 14–15, 96 S.Ct. 2413, 2420–21, 49 L.Ed.2d 276 (1976). In *Aldinger*, as in the present case, the underlying federal claims were brought under 42 U.S.C. § 1983. The Court refused to allow the impleading of a new defendant on the basis of a state law claim over which there was no independent basis of federal jurisdiction. Here, there are no remaining federal claims against Durbin and Heddinger and the only basis for extending pendent jurisdiction involves the identical state law claims against defendants Bartle and Waldman for whom independent federal question jurisdiction does exist. As in *Aldinger*, the policy interest in consolidating all related claims in one trial does not encompass the stretch of federal jurisdiction that would be necessary to extend pendent jurisdiction to the state law claims against Durbin and Heddinger.

The lack of any basis for federal question jurisdiction would not be fatal to the complaint, of course, if diversity jurisdiction existed. The complaint (¶¶ 4–8) alleges that diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a), exists as to all defendants, in that Hixon is a resident of Ohio and all defendants reside and work in Pennsylvania. However, residence is insufficient to

establish citizenship for diversity purposes. Diversity requires that the non-resident be domiciled in another state at the commencement of the suit. *Sadat v. Mertes*, 615 F.2d 1176 (7th Cir. 1980); *Krasnov v. Dinan*, 465 F.2d 1298 (3rd Cir. 1972); *Fleming v. Mack Trucks, Inc.*, 508 F.Supp. 917 (E.D.Pa.1981). Residence is evidence of domicile, but it must be coupled with evidence of other factors which prove an intent to remain indefinitely, such as voting, payment of taxes or location of business. C. Wright, *Federal Courts* § 26, at 87 (2d ed. 1970). The burden of establishing domicile rests with the complainant, and the presumption is that a federal court lacks jurisdiction until such burden has been satisfied. *Avins v. Hannum*, 497 F.Supp. 930 (E.D.Pa.1980); *Coggins v. Carpenter*, 468 F.Supp. 270 (E.D. Pa.1979). The plaintiff here has simply alleged residence in Ohio which, even if true, is not of itself sufficient to establish domicile and thereby citizenship for diversity purposes.

It is unclear whether there is a genuine factual issue as to where plaintiff is domiciled. If plaintiff used the term "residence" in the complaint as though it were the equivalent of "domicile," a simple amendment can cure the jurisdictional flaw. I will therefore allow plaintiff fifteen (15) days to amend his complaint to plead diversity jurisdiction properly. If plaintiff chooses to amend his complaint, he is directed to state specifically the facts he relies upon to establish diversity. Thereafter, of course, I anticipate that defendants will alert the Court promptly if they dispute any of the material facts relating to diversity, so that an evidentiary hearing may be scheduled to resolve the issue.

*Defendants Bartle and Waldman*

Defendants Bartle and Waldman move to dismiss the entire complaint against them for failure to state a claim upon which relief can be granted. As the plaintiff has no objection to the dismissal of Count IV, the conspiracy claim (Plaintiff's Brief in

---

1. Because the Court is currently without jurisdiction over the claims against Durbin and Heddinger, this Memorandum does not address

the merits of their challenge to plaintiff's "official oppression" claim.

Opposition to Motion to Dismiss the Complaint at 27), it is accordingly dismissed.

In a motion to dismiss a complaint filed under Rule 12(b)(6), the defendants must establish that "the plaintiff can prove no set of facts in support of his claim." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). As the defendants cannot establish this as to plaintiff's procedural due process claims, the motion to dismiss these claims is denied. As the plaintiff has failed to state a claim upon which relief can be granted in his substantive due process and irrebuttable presumption counts (Complaint, Counts II and III), they are dismissed. Because all federal claims against Bartle and Waldman are not dismissed, the doctrine of pendant jurisdiction will allow this Court to consider the state law claims (Counts V–XI) against them which arise out of the same cause of action. *Hurn v. Ousler*, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933). The defendants' correct assertion that Hixon has not as yet established diversity jurisdiction will not, therefore, bar consideration of the state law claims against them. Bartle's and Waldman's motion to dismiss Counts V–XI for lack of jurisdiction is accordingly denied.

### 1. *Procedural Due Process* (Count I)

█ Because Hixon may be able to establish an interest in his employment contract with the School Employees' Retirement Board which the 14th Amendment and 42 U.S.C. § 1983 protect against arbitrary deprivation by state officials, defendants Bartle and Waldman's motion to dismiss Count I is denied.

In order for plaintiff's procedural due process claim to succeed, he must demonstrate either a property or a liberty interest in his continued employment by the state which has been interfered with by state officials without notice or opportunity to be heard.

Hixon will be able to demonstrate the necessary property interest if he had an enforceable and "legitimate claim of entitlement" to his continued employment by the state. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Such enforceable expectations arise not from the federal constitution, but from state law governing the property interest at issue. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709 (1972).

According to Pennsylvania case law, an enforceable expectation in continued state employment will exist only if the employee has been granted, either by statute or individual contract, some form of guarantee. *Amesbury v. Luzerne County Inst. Dist.*, 27 Pa.Commw. 418, 366 A.2d 631 (1976); *Sergi v. Pittsburgh School Dist.*, 28 Pa.Commw. 576, 368 A.2d 1359 (1977). Hixon's enforceable expectation, if any, must arise from the two contracts which he signed with the Board.

The Board had full statutory authority to contract for the services of a financial consultant. 24 Pa.Cons.Stat.Ann. § 8502(b) (Purdon Supp.1982). Furthermore, as an official opinion of the Attorney General dated February 1, 1977 and addressed to defendant Heddinger emphasizes, "the function of managing the Public School Employes' [*sic*] Retirement Fund is uncontrovertibly one which the Board exercises independent of any control by the Governor's Office," and the Board members are fully empowered to contract for professional services "as they deem advisable . . . without the necessity of obtaining approval from other than the Board's counsel and its comptroller." 77–1, Op. Att'y Gen. 2 (1977). The Attorney General further emphasized that the Board's independent authority to employ professional labor was an exception to the Board's general duty to comply, as do all independent administrative boards, with the various provisions of the Administrative Code. 77–1 Op. Att'y Gen. 3 (1977).

While the authority of the Board to hire Hixon is clear, the authority of the Attorney General, and subsequently the General Counsel, to pass upon the merits of the

Board's selection when conducting their required review, is by no means clear. I have determined, upon a reading of the applicable state law, that the plaintiff's claim that the state officials went beyond their statutory authority when they passed on the merits of his appointment is well founded, assuming the allegations of the complaint to be true. It is therefore unnecessary to reach the question of the wisdom of the Attorney General and General Counsel's consideration of Hixon's past record, or whether their decision on the merits would have been different had Hixon been accorded a hearing.

According to Pa.Stat.Ann. tit. 71, § 292 (Purdon 1962), and 37 Pa.Admin.Code § 161.12 (Shepard's 1982), the operative provisions under which Bartle acted, the scope of the Attorney General's authority to review the substance of a contract is specifically limited. He is empowered only to determine whether statutory authority and the requisite appropriations exist and to pass upon the legality of the contractual provisions.

The Commonwealth defendants argue that the language of 37 Pa.Admin.Code § 161.12 (Shepard's 1982) "makes it clear" that "the Attorney General's review was highly discretionary." (Reply Brief in Support of Motion to Dismiss Complaint As to Defendants Bartle and Waldman at 4). The defendants rely upon the prefatory language of § 161.12 which states that "[r]eview of contracts will go to the substance of the contract." The language which immediately follows the cited passage, however, defines the prefatory language, and limits the Attorney General's review to five specific criteria, none of which are applicable to the present case.

The new Commonwealth Attorney's Act, under the authority of which defendant

Waldman acted, even more specifically limits the scope of the General Counsel's review of contracts of independent administrative agencies to their "form and legality," as well as enabling him to prepare form contracts for use by such agencies. Pa. Stat.Ann. tit. 71, § 732–301(11) (Purdon Supp.1981).[2]

None of these carefully limited statutory provisions give the state officials unbridled discretion to reach the substance of the Board's decision and overrule its choice simply because they disagreed with it. Only by reversing the normal rules of statutory construction and allowing the general language of the Administrative Code quoted in the Commonwealth's brief to govern the specific unquoted language which follows, can the Commonwealth argument be supported. *See Weyerhaeuser S. S. Co. v. U. S.*, 372 U.S. 597, 601, 83 S.Ct. 926, 928, 10 L.Ed.2d 1 (1963).

Even if I were disposed to follow such an interpretation in general, I would be dissuaded in this particular case by the opinion of the Attorney General that the legislature intended the Board to have the power to make an independent choice in the award of professional service contracts, free from interference by other agencies of the executive branch. 77–1 Op. Att'y Gen. 2 (1977).

■ Moreover, even assuming that Bartle and Waldman did not exceed their authority in refusing to approve the contracts, Hixon may still be able to establish the requisite property interest in the completed contracts with the Board. The state has argued that a contract which does not have all the statutorily required authorizations is not a completed contract. (Defendant's Reply Brief in Support of Motion to Dismiss Complaint As to Defendants Bartle and

---

**2.** The Commonwealth argues that this clear language of limitation in the contract review section of the statute does not govern here, since § 301(3), which defines generally the General Counsel's authority, empowers him to render "legal advice ... concerning every matter and issue arising in connection with the exercise of the official powers and duties ... of [an] executive agency." (Defendant's Reply

Brief in Support of Motion to Dismiss Complaint As to Defendants Bartle and Waldman at 6, emphasis deleted). Section 301(3) is simply not applicable here. The Board is not an executive agency, but rather an independent agency, to whom the General Counsel may render advice only "upon request." Pa.Stat.Ann. tit. 71, § 732–301(3) (Purdon Supp.1981). The Board made no such request here.

Waldman at 1–2). The cases upon which the defendants rely in support of this proposition deal with the enforceability of oral contracts between private individuals and independent state agencies. *See Carriage Tours, Inc. v. Valley Forge Park Comm'n*, 37 Pa.Commw. 375, 390 A.2d 902 (1978); *Commonwealth v. Seagram Distillers Corp.*, 379 Pa. 411, 109 A.2d 184 (1954). The issue in this case, however, turns upon the status of a written contract approved by an authorized independent agency, but disapproved by the Attorney General and the General Counsel. The proposition upon which the state's argument depends, therefore, that Hixon had no completed contract with the state and thus no enforceable property interest, is not established. When I consider plaintiff's claims in the light most favorable to him, as I must do for purposes of a motion brought under Rule 12(b)(6), Hixon has established the requisite property interest in continued employment necessary to support his procedural due process claims.

■ Under the same standard, the allegations of the complaint are sufficient to establish that a plaintiff had a liberty interest in future employment such as would entitle him to due process before defendants could constitutionally take the actions of which they are accused. A liberty interest in future employment, and thus, a cognizable procedural due process claim, exists if the charges made by Bartle and Waldman are sufficiently stigmatizing as to deprive Hixon of future employment opportunities. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The test, therefore, is not whether the charges made by Bartle and Waldman are defamatory in state law, but whether the damage to Hixon's employment prospects inflicted by statements of state officials is serious enough to constitute an infringement of his protected liberty interest in such employment. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

We note that Bartle and Waldman made public their reasons for disapproving Hixon's contract, which significantly increased the stigma and the possible damage to his employment opportunities. Courts have recognized that such publicity may augment the damage to a plaintiff's future employment prospects and may help establish his due process claim. *Bishop v. Wood*, 426 U.S. 341, 348–9, 96 S.Ct. 2074, 2079–80, 48 L.Ed.2d 684 (1976); *McKnight v. Southeastern Pennsylvania Transportation Authority*, 583 F.2d 1229 (3rd Cir. 1978). In any case, the degree of stigma resulting from Bartle and Waldman's actions and the harm caused to Hixon's future employment opportunities present questions of fact which may not be resolved in the context of a motion to dismiss. *McKnight*, 583 F.2d at 1236.

The truth of the charges made against Hixon will be available to defendants as a defense. *Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977). In order to dismiss the liberty claim at this stage, however, plaintiff must be unable, and must in fact not attempt, to dispute the truth of all charges made against him. *Codd*, 429 U.S. at 627, 97 S.Ct. at 884. As plaintiff's reply to defendants' motion to dismiss demonstrates, this is not the case here. Plaintiff claims that there were mitigating circumstances regarding his past conviction, and he totally contests the allegations of financial mismanagement cited in Waldman's letter of April 14, 1981 disapproving Contract 3. (Complaint, Exhibit F.) Since Hixon's future employment prospects were arguably affected by the publication of Bartle's and Waldman's letters, he has asserted a sufficient liberty interest to survive a motion to dismiss brought under Rule 12(b)(6).

2. *Substantive Due Process* (Count II)

Hixon has claimed that, in refusing to approve the contracts because of his past conviction, defendants Bartle and Waldman discriminated against him as one of a class of ex-felons, and relied upon criteria for employment which were not rationally related to plaintiff's qualifications to serve the Board as an investment counselor. De-

fendant's actions, plaintiff claims, therefore violated his right to substantive due process guaranteed by the 14th Amendment. The substantive due process claim, although dependent as is the procedural claim upon the plaintiff's threshold establishment of a protected liberty or property interest, presents a completely distinct legal theory and one I believe is inapplicable to the present case.

■ To make out a substantive due process challenge, where fundamental rights are not at stake, the plaintiff must establish that the state's decision was not rationally related to the achievement of a legitimate state objective. *Williamson v. Lee Optical Co.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). The plaintiff here, therefore, must show more than that the procedure by which the state made its decision was faulty, or that a different result would have been reached had the proper procedure been followed. He must prove that the state's decision was tainted by some inherent irrationality—that, even were these defendants entitled to review the merits of the Board's choice, and even were the facts simply as the defendants believed them to be, no rational person would have refused to approve plaintiff's contract on the basis of those facts. Plaintiff here cannot meet this heavy burden. The state has asserted an interest in the integrity of state government which is undoubtedly legitimate. (Defendant's Reply Brief in Support of Motion to Dismiss Complaint As to Defendant's Bartle and Waldman at 10–12). One simply cannot say that it would always be irrational for a state to deny a contract involving substantial sums of money and considerable financial responsibility to an ex-felon who failed to report the conviction on a state application form.

Similarly, the plaintiff's argument that the defendants discriminated against him as one of a class of ex-felons is not supported by the allegations in the pleadings. The Attorney General and the General Counsel made an individualized determination that plaintiff's past conviction for burglary disqualified him for the particular post he sought. Thus, *Kindem v. City of Alameda*, 502 F.Supp. 1108 (N.D.Cal.1980), upon which plaintiff relies, is not in point here. In *Kindem*, a statutory presumption that all ex-felons were unqualified to hold municipal positions was held violative of substantive due process. In this case, as distinguished from *Kindem*, the individualized decision of state officials, in the absence of any statutory presumption against ex-felons as a class, cannot be held to violate plaintiff's substantive due process rights. His claim is accordingly dismissed. *See Hunter v. Port Authority of Allegheny Cty.*, 277 Pa.Super. 4, 419 A.2d 631, 638 (1980) (Past convictions may be considered as a factor in employment decisions if an individualized determination is made.)

In dismissing this claim, I emphasize that nothing in my ruling precludes plaintiff from proving at trial that defendants Bartle and Waldman acted wrongfully in refusing to approve the contract. Moreover, if plaintiff prevails on his procedural due process claim at trial and proves that he would have been able to carry out and enjoy the benefits of his contracts with the Board but for the defendants' wrongful actions he will still be able to claim damages for the substantive deprivation of his contractual rights. *Carey v. Piphus*, 435 U.S. 247, 255, 98 S.Ct. 1042, 1048, 55 L.Ed.2d 252 (1978).

3. *Irrebuttable Presumption* (Count III)

In this Count, plaintiff alleges that the Attorney General and General Counsel created an irrebuttable presumption that as an ex-felon he was not qualified to be a consultant to the Board. This Count is virtually indistinguishable from the substantive due process Count, in that it depends upon the claim that the state has stigmatized all ex-felons as a class unworthy of being entrusted with sizeable government contracts. As noted above, Hixon was not denied the contract as one of a class, but as an individual. The case cited in plaintiff's brief in support of his claim is thus not on point. *Gurmankin v. Costanzo*, 556 F.2d 184 (3rd Cir. 1977) (irrebuttable presumption that all blind persons are incapable of teaching in

the public school system is unconstitutional). Moreover, since the irrebuttable presumption claim will be tested by the same minimum rationality standard used for the substantive due process claims, the claim will fail for the reasons discussed above. *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Malmed v. Thornburgh*, 621 F.2d 565 (3rd Cir. 1980). Count III of the complaint is accordingly dismissed.

An appropriate order will be entered.

### ORDER

AND NOW, this 27th day of July, 1982, it is hereby Ordered that:

(1) Defendants Heddinger and Durbin's motion for partial judgment on the pleadings is GRANTED in part. Judgment is hereby entered in favor of defendants Heddinger and Durbin and against plaintiff on Count IV of the complaint. The remainder of the complaint is DISMISSED without prejudice. Plaintiff is granted leave to file an amended complaint against these two defendants, in accordance with the attached Memorandum, within fifteen (15) days of the date of this Order.

(2) Defendants Bartle and Waldman's motion to dismiss the complaint as to them is GRANTED in part and DENIED in part. Counts II, III and IV of the complaint are dismissed with prejudice. Defendants' motion to dismiss Counts I and V–XI is DENIED.

AND IT IS SO ORDERED.