**Harry DARKS, Plaintiff-Appellant,**

**v.**

**CITY OF CINCINNATI, et al.,
Defendants-Appellees.**

**No. 83–3718.**

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 24, 1984.
Decided Oct. 10, 1984.

Marc D. Mezibov, argued, Cincinnati, Ohio, for plaintiff-appellant.

William M. Gustavson, argued, M. Kathleen Robbins, Asst. City Sol., Cincinnati, Ohio, for defendants-appellees.

Before MERRITT and KENNEDY, Circuit Judges, and WISEMAN, Chief District Judge.[*]

* Honorable Thomas A. Wiseman, Jr., United States District Court for the Middle District of Tennessee, sitting by designation.

CORNELIA G. KENNEDY, Circuit Judge.

The defendant city denied plaintiff Darks a license to operate a dance hall[1] because Darks had two felony convictions. Darks sued the city claiming he had been discriminated against on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. §§ 1981 & 1983; and that the city's licensing policy deprived Darks of equal protection and due process of law. On April 30, 1983 the District Court granted summary judgment for the city on the Title VII claim, ruling that the city was not an employer with respect to Darks. On July 28, 1983 the District Court granted summary judgment for the city on the equal protection and due process claims. The case proceeded to trial before the District Court on the racial discrimination claim under 42 U.S.C. §§ 1981 & 1983. After Darks presented his case, the District Court held that racial discrimination had not been proven and granted the city's motion for a directed verdict. Darks does not challenge that ruling. He appeals the holdings (1) that under Title VII the city is not an employer of its licensees, and (2) that the city's licensing policy does not violate equal protection or due process of law.

### Title VII

Darks alleged that the city denied him a license because of his race and therefore violated 42 U.S.C. § 2000e–2, which provides:

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race ....

The city violated this provision if because of race it either (1) refused to hire Darks or (2) discriminated against him with respect to terms, conditions, or privileges of employment.

In the ordinary meaning of the term, the city does not "hire" one to whom it grants a license to operate a dance hall. The city pays no wages to a licensee and has no economic interest in the dance hall. The city makes no effort to find a dance hall for a licensee to operate. It is entirely up to the licensee to make all arrangements needed to establish a successful business, and the licensee bears all risks of success or failure. The city has no control over the manner in which a dance hall is operated as long as it is operated lawfully. "The extent of the employer's right to control the means and manner of the worker's performance is a primary factor [in determining whether Title VII is applicable]." *Lutcher v. Musicians Union Local 47*, 633 F.2d 880, 883 (9th Cir.1980).

If not hired by the city, a licensee such as Darks is not employed by anyone at all.[2] The grant or denial of a license, therefore, does not constitute a term, condition, or privilege of employment if the grant of a license is not a hiring by the city.

---

1. Darks and his partner Andre Milton had applied for a permit to operate a facility in Cincinnati known as London Hall. Disco dances were held in London Hall on Friday and Saturday nights at varying hours between 11:00 p.m. and 5:00 a.m. No liquor licenses were available; the late hours were chosen to avoid competition with establishments serving alcohol. The dances were attended by 150 to 200 people. The hall was used for wedding receptions and private parties at other times during the week.

2. In his Memorandum in Opposition to Defendant's Motion for Summary Judgment, Darks conceded that "the city does not 'hire' an appli-

cant," Memorandum at 2, but suggested nonetheless that the city is a licensee's employer, saying: "[T]he City maintains a certain degree of control over its licensees in a fashion which is not wholly unlike that identified with a pure employment situation." Darks does not explain how the city can employ someone it never hired. In any event, Title VII by its language applies to hirings, discharges, and terms, conditions, or privileges of employment, not to employment relationships. Darks has not identified any term, condition, or privilege of employment that has been affected by the city other than its failure to "hire" him.

Citing *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338 (D.C.Cir.1973) and *Puntolillo v. New Hampshire Racing Commission*, 375 F.Supp. 1089 (D.N.H.1974), Darks argues that an employment relationship exists between city and licensee because by denying a license the city can deprive the applicant of an employment opportunity. In *Sibley* the plaintiff was a male private nurse who obtained employment with patients by referral through a nurses' registry. The plaintiff alleged that the defendant, a private hospital, blocked his access to female patients at the hospital. The District of Columbia Circuit noted that the hospital controlled both the plaintiff's access to prospective employers and the premises on which the work was performed, and held that Title VII applied to prevent the hospital from "discriminatorily interfering with an individual's employment opportunity with another employer." 488 F.2d at 1341. In *Puntolillo* a driver-trainer of harness horses claimed that the racing commission had refused to lease him stall space at the race track, thus denying him the opportunity to gain employment with horse owners. Citing *Sibley*, the court held that the racing commission's control over the driver-trainer's access to his job market brought the commission's actions within the ambit of Title VII.

*Sibley* and *Puntolillo* both involved defendants with power to interfere with the plaintiffs' employment with third parties. We need not decide whether we agree that Title VII applies to such cases, however. *Sibley* and *Puntolillo* differ from the present case in at least two significant respects.[3] First, the defendants in both *Sibley* and *Puntolillo* exercised a degree of control over the activity involved not found in the present case. More importantly, in both *Sibley* and *Puntolillo* the defendants had control over the plaintiffs' employment with third parties, and therefore affected terms, conditions, or privileges of the plaintiffs' employment although not employing the plaintiffs themselves.[4] The proprietor of a dance hall, in contrast, is not employed at all but is an independent entrepreneur.

■ The District Court correctly granted summary judgment for the city on Darks' Title VII claim on the ground that Title VII does not apply to the city's licensing of dance halls.

## Equal Protection

Darks claims that the city's practice of denying dance hall licenses to all convicted felons deprived him of equal protection of the laws. Cincinnati Municipal Code § 829–11 provides that licenses shall be issued only to "reputable person[s] of good moral character." Darks alleges, and it is not contested, that it is the city's uniform practice to apply this provision by denying a license to any person with a felony record.

■ The parties agree that the constitutional validity of this classification must be measured by the rational basis test. *See Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); *Upshaw v. McNamara*, 435 F.2d 1188 (1st Cir.1970). There is a rational basis for a governmental classification if the distinctions made by that classi-

---

3. A third distinction between the present case and *Sibley* is that unlike the present case *Sibley* did not involve a government's licensing powers. Two district court decisions have held that *Sibley's* rationale does not apply to licensing decisions even if they effect an individual's employment with a third party. *See National Organization for Women v. Waterfront Commission*, 468 F.Supp. 317 (S.D.N.Y.1979); *Lavender-Caballero v. Department of Consumer Affairs*, 458 F.Supp. 213 (S.D.N.Y.1978). In *Puntolillo*, a licensing case, the court did not consider this distinction.

4. In *Puntolillo* the defendants apparently did not have complete control over the driver-trainers' employment opportunities with horse owners. Driver-trainers denied stall space were not completely foreclosed from employment but merely had to pass on the additional costs of private off-track stabling. Nevertheless, the court in *Puntolillo* found that the defendants "have control over the ability of a driver-trainer to race, i.e., earn a living ... that is coequal with that of the race horse owners." 375 F.Supp. at 1090.

fication "have some relevance to the purpose for which the classification is made." *Marshall v. United States,* 414 U.S. 417, 422, 94 S.Ct. 700, 704, 38 L.Ed.2d 618 (1974); *Baxtrom v. Herold,* 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966).

The case law clearly indicates that at least some purposes will entitle a state or its subdivision to separately classify those convicted of a felony. *See, e.g., DeVeau v. Braisted,* 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960) (rational basis for statute barring felons from holding office in waterfront unions); *Baer v. City of Wauwatosa,* 716 F.2d 1117 (7th Cir.1983) (rational basis for denying felon a license to sell guns); *Schanuel v. Anderson,* 708 F.2d 316 (7th Cir.1983) (rational basis for denying private detective and security licenses to felons; contrary argument "patently without merit" because it "is not unreasonable to suppose that the public trust might be undermined by assigning such tasks to ex-offenders"); [5] *United States v. Craven,* 478 F.2d 1329 (6th Cir.1973) (rational basis for statute prohibiting a felon from receiving firearms in interstate commerce).

These cases all involve activities in which the state has a particularly strong interest or need to protect the public from those with criminal propensities. A dance hall license would seem to involve the same concerns, although possibly not to the same degree. More closely on point is *Flanagan v. Town of Petersburg,* 108 W.Va. 111, 150 S.E. 382 (1929), where the court held that there was a rational basis for denying a pool hall license to an applicant who had been convicted of assault and battery.

Darks cites two cases, *Kindem v. City of Alameda,* 502 F.Supp. 1108 (N.D.Cal.1980) and *Butts v. Nichols,* 381 F.Supp. 573 (S.D. Iowa 1974), where district courts struck down statutes denying any form of civil service employment to convicted felons. The practice questioned here, however, only restricts felons from receiving one type of license, which the city has reason to restrict to those of good character.

In granting the city's motion for summary judgment on the equal protection claim, the District Court found the rational basis test satisfied:

[T]he denial of dance hall licenses to convicted felons is rationally related to the legitimate state interest of insuring that such halls are operated by persons of integrity with a respect for the law, and insuring that they do not attract a criminal or other disreputable clientele. It is rational to connect a past felony conviction with a disrespect for the law and a lack of moral integrity. It is also rational to conclude that patrons exhibiting these traits would be more welcome at dance halls operated by those of like disposition than at dance halls operated by those without a past criminal record.

We agree with the District Court that the city could rationally conclude that denying dance hall licenses to felons would further the city's legitimate purpose of insuring that dance halls are operated by persons of integrity with respect for the law. A dance hall, which serves as a gathering place during late night and early morning hours, could pose a significant threat to the peace of the community if not run by such persons. The city also has an interest in seeing that the owner will abide by and enforce liquor and tax collection laws.

Cincinnati Municipal Code § 801–25 provides that when a city licensee is convicted of a misdemeanor or felony involving moral turpitude his license shall be revoked. This provides an additional rational basis for the city's practice of refusing to issue licenses to convicted felons: the desire to treat offenders the same irrespective of the date of their conviction. In *Miller v. Carter,* 547 F.2d 1314 (7th Cir.1977) the court held that an ordinance denying chauffeurs' licenses to felons denied equal protection because it was irrational to deny licenses to persons who had been convicted before receiving a license but not to revoke licenses of persons convicted while licensees. The city's practice at issue here is designed to avoid the reverse of the situation in *Miller.*

---

**5.** *Contra Smith v. Fussenich,* 440 F.Supp. 1077 (D.Conn.1977).

We conclude that the city has a rational basis for denying dance hall licenses to convicted felons, and thus that this practice does not violate the equal protection clause.

### Due Process

Darks' final argument is that he was deprived of a liberty interest without due process of law because the city's practice of denying licenses to felons on the grounds that they are not persons of good character amounts to an irrebuttable presumption. However, the city's practice of denying licenses to all felons is in effect a rule of substantive law rather than an irrebuttable presumption. See *Kirk v. Secretary of HHS*, 667 F.2d 524, 533–35 (6th Cir.1981), *cert. denied*, —— U.S. ——, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). As the City of Cincinnati follows the rule that all felons are denied licenses, it is irrelevant whether the applicant is actually of good moral character. If the classification in operation and effect is rationally related to legitimate state objectives, it is not subject to attack on due process grounds merely by labeling the rule followed an irrebuttable presumption. *Kirk*, 667 F.2d at 534.

Accordingly, the judgment of the District Court is affirmed.