**Barry FURST, Plaintiff,**

v.

**NEW YORK CITY TRANSIT AUTHORITY, Defendant.**

No. 84 Civ. 4189.

United States District Court, E.D. New York.

April 1, 1986.

Stephen D. Hans, Rego Park, N.Y., and Ronald L. Skoler, New York City, for plaintiff.

Robert A. Rifkin, Office of Richard K. Bernard, Brooklyn, N.Y., for defendant.

MEMORANDUM AND ORDER

GLASSER, District Judge:

Shortly after he pled guilty to second degree attempted manslaughter in Nassau

County Court, plaintiff Barry Furst was dismissed by his employer, defendant New York City Transit Authority (NYCTA). Following his dismissal, the plaintiff instituted this action for reinstatement under 42 U.S.C. § 1983 and now moves for summary judgment against the NYCTA contending that he lost his job pursuant to the defendant's unconstitutional policy of dismissing all employees convicted of committing felonies. The defendant cross-moves for summary judgment asserting that no such policy exists. For the reasons stated herein, the plaintiff's motion is granted and the defendant's motion is denied.

*Background*

The plaintiff was hired as a bus driver by the defendant on or about February 15, 1965. The plaintiff held that position for over fifteen years until his promotion to the position of surface line dispatcher on December 20, 1980. During his tenure with the defendant, the plaintiff received three letters of commendation and was never the subject of internal disciplinary proceedings.

On August 27, 1981, the plaintiff's son Roger handed the plaintiff a licensed gun and during the exchange, the gun discharged, killing Roger. On that date, the plaintiff was arrested and charged with manslaughter in the second degree for the death of Roger.[1]

The defendant suspended the plaintiff without pay on September 4, 1981, charging that the plaintiff had committed a crime in violation of Rules 11(f) and 35 of the Rules and Regulations Governing Employees Engaged in the Operation of the New York City Transit System (NYCTA Rules).

Rule 11(f) provides:

Employees must not violate any criminal law, commit any illegal act, or be a party to any immoral or indecent conduct, whether on or off duty.

Rule 35 provides:

Disobedience of these rules and regulations or of instructions ... shall be reason for charges of misconduct and incompetence and such misconduct or incompetence will be subject to penalty of dismissal, demotion, suspension or other such penalty as the Authority shall impose.

On October 15, 1981, Richard Bernard, General Counsel to the defendant, ordered the plaintiff, by letter, to appear at a hearing to answer the charges contained in the suspension order of September 4, 1981. Bernard wrote that if the charges were sustained, the plaintiff would be dismissed, demoted or otherwise disciplined.

After pleading guilty to the lesser crime of attempted manslaughter in the second degree on October 16, 1981, the plaintiff was sentenced to the Nassau County Correctional Center for one year,[2] and after 67 days of incarceration was placed in a work release program. The plaintiff has not been accused of any criminal activity since his release.

On May 13, 1982, a hearing was held before Referee Daniel Gutman, pursuant to N.Y.Civil Service Law § 75(2) (McKinney 1983), to determine the validity of the

---

**1.** N.Y.Penal Law § 125.15 (McKinney 1975) provides in part:

A person is guilty of manslaughter in the second degree when:
1. He recklessly causes the death of another person;

   *     *     *     *     *     *

Manslaughter in the second degree is a Class C felony.

**2.** On January 7, 1982, the plaintiff was sentenced by Judge Marvin I. Goodman of the Nassau County Court. In sentencing the plaintiff, Judge Goodman made the following comments:

"I have read the over 90 letters that your lawyer submitted to me on your behalf. I have never seen that many letters. I don't know if any judge will ever see that many letters.

"I make all of these comments to say this to you: That you are a wonderful person....

"I have to send you to jail Mr. Furst. There is no other way for this court. But I am giving you the minimum sentence that I can... I have no choice, Mr. Furst and I am truly impressed by you. This is a very sad experience, very sad experience for the court." [sic]

charges against the plaintiff contained in the suspension order of September 4, 1981.

Section 75(2) provides:

2. Procedure. A person against whom removal or other disciplinary action is proposed shall have written notice thereof and of the reasons therefor, shall be furnished a copy of the charges preferred against him and shall be allowed at least eight days for answering the same in writing. The hearing upon such charges shall be held by the officer or body having the power to remove the person against whom such charges are preferred, or by a deputy or other person designated by such officer or body in writing for that purpose. In case a deputy or other person is so designated, he shall, for the purpose of such hearing, be vested with all the powers of such officer or body and shall make a record of such hearing which shall, with his recommendations, be referred to such officer or body for review and decision. The person or persons holding such hearing shall, upon the request of the person against whom charges are preferred, permit him to be represented by counsel, or by a representative of a recognized or certified employee organization, and shall allow him to summon witnesses in his behalf. The burden of proving incompetency or misconduct shall be upon the person alleging the same. Compliance with technical rules of evidence shall not be required.

Under § 75(2), Referee Gutman was to determine the validity of the charges against the plaintiff and to make recommendations as to the plaintiff's future employment status to the President of the NYCTA.

Referee Gutman made an independent finding that the plaintiff committed a criminal act in violation of Rules 11(f) and 35 of the NYCTA Rules and recommended the discharge of the plaintiff stating:

Under the circumstances of the case, we see no basis for the mitigation of penalty for this tragic event. *The policy of the Authority where employees are convicted of a felony, requires discharge* (emphasis added).

In making his recommendation, Referee Gutman did not indicate that he considered any factor other than the plaintiff's crime in reaching his decision.[3]

In a deposition, William I. Buchanan, the NYCTA's Chief Labor Relations Assistant, who at the time was responsible for the management of the NYCTA's disciplinary section, defined the "policy" of the NYCTA to which Referee Gutman had referred in his decision. The deposition reads in part, as follows:

Q. ... It is the findings and recommendations of the Hearing Referee Gutman. Take a look at that, please.

A. Yes.

Q. Mr. Buchanan, if I may direct your attention to page 3 under the title recommendation, referring to the last sentence of the third paragraph which states, "The policy of the Authority where employees are convicted of a felony requires discharge."

Do you see that line?

A. Yes.

Q. Is that a correct statement?

A. I would say that I don't think that every employee convicted of a felony requires discharge. You know, again, he says felony. If he is talking about serious crime in terms that I previously described to you, then I would say that discharge is required.

Q. So if we substitute the term serious crime for the term felony, you would agree that that's a correct statement?

A. Yes.

Deposition of William I. Buchanan, March 15, 1985 at 46–47 (Buchanan deposition).

Pursuant to the collective bargaining agreement between the plaintiff's union, the Queens Supervisory Association, and

---

**3.** In his decision, Referee Gutman indicated that he believed that the plaintiff was aware, at the time of the shooting, that the gun which killed his son was loaded. The Referee did not explain the relevance of this observation to his recommendation.

the NYCTA, the plaintiff appealed the Hearing Referee's decision to the NYCTA Impartial Disciplinary Board (Board). The Board, comprised of a representative from the NYCTA, a representative from the plaintiff's union, and an independent member, was authorized to review the decision of the Hearing Referee and to make recommendations to the President of the NYCTA.

On March 26, 1984, the Board approved the Referee's findings and recommended the discharge of the plaintiff, claiming that the policy of the NYCTA supported such a decision. The Board wrote:

> ... the crime for which Mr. Furst was convicted was a serious one and we conclude that the Authority had just cause to dismiss Mr. Furst. Accordingly, the Board is unable to conclude that the decision of the Hearing Officer *was inappropriate in light of the facts and circumstances of this case and the Authority's policy and practice in similar cases* (emphasis added).

In his deposition, Mr. Buchanan, the NYCTA representative on the Board, explicated the Board's understanding of the NYCTA's "Policy and Practice":

> Q. Getting back to the opinion and recommendation of the Impartial Disciplinary Review Board, it states on page 2 on the last line of paragraph 2, refers to the Authority's policy and practice in similar cases. It says, "Accordingly, the Board is unable to conclude that the decision of the Hearing Officer was inappropriate in light of the facts and circumstances of this case and the Authority's policy and practice in similar cases."

Mr. Buchanan, what is that policy that you are referring to?

> A. That's the policy and practice of employees who are charged with serious crimes and such crimes—that a reoccurrence of such things on our property will be detrimental to the service and might endanger our property or civilians and the seriousness of the crime, so that the person be dismissed.
> Q. So those individuals are dismissed, in effect, right?
> A. What do you mean? I don't understand your question.
> Q. I didn't understand the answer. Let me ask it again.

The line I just read from your decision refers to the Authority's policy and practice in similar cases regarding the dismissal of employees; and I am simply asking you to explain what that policy is, to your understanding?

> A. To my understanding, that policy and practice, and I would say based upon practice, that under all the circumstances an employee who is convicted of a very serious crime, notwithstanding the other—there might be other mitigating circumstances, if that person—that person would be dismissed from the service. We recommend that he be dismissed from the service.

Buchanan deposition at 44–46.

Despite the Board's recommendation to discharge the plaintiff, it suggested elsewhere in its opinion that the NYCTA consider reinstating the plaintiff, citing the plaintiff's unblemished employment record and the "unfortunate," "isolated" circumstances of his son's death.[4]

---

4. The Board wrote:

The record shows that Mr. Furst had a long and creditable record of service with the Authority prior to the incident which led to his conviction. Upon his release (after incarceration without incident, which included a significant period of participation in a work-release program) Mr. Furst secured and has maintained continuous employment as a bus operator without adverse incident. He has maintained a strong desire to return to the employ of the Authority. Although the Board can find no basis to disturb the decision of the Hearing Officer, after weighing all the facts and circumstances of this case, together with Mr. Furst's record, we urge the Authority to consider permitting Mr. Furst the opportunity to return to duty.

The court can only speculate in attempting to reconcile the Board's recommendation that the plaintiff be discharged with its suggestion that he be reinstated. It would appear that the Board believed that the NYCTA maintained a policy requiring the dismissal of employees who were convicted of felonies but felt that the NYCTA should exempt Mr. Furst from such a policy. Mr. Buchanan suggested at his deposition that the Board was divided as to how to resolve the Furst matter and that the final decision reflected something of a compromise. Buchanan deposition at 35–40.

Under § 75(2), as applied by the NYCTA, the President of the NYCTA, after considering the recommendation of the Hearing Referee and the Board, is required to decide the fate of a suspended employee. At the time the plaintiff's case was under review, the President of the NYCTA had delegated this responsibility to Bruce McIver, the NYCTA's Acting Vice President of Labor Relations. As Acting Vice President of Labor Relations, McIver had full responsibility for all decisions of the Personnel Department of the NYCTA. Deposition of Bruce C. McIver, March 7, 1985 at 5 (McIver Deposition).

On May 18, 1984, McIver issued a terse, one sentence decision in which he ordered the dismissal of Furst. McIver wrote:

After reviewing the record of the disciplinary hearing affecting the above named employee, I have adopted the recommendation made by the Review Board in the Disciplinary Procedure.

At McIver's deposition, he approved of Referee Gutman's interpretation of NYCTA's policy and contended that his decision was consistent with such a policy.

Q. Directing your attention to page three under title Recommendation. If you would please refer to the last sentence of the third paragraph which

\* \* \* \* \* \*

It is recommended that the recommendation of the Hearing Referee in the case of Barry Furst be sustained. However, notwithstanding the Board's sustaining of the Hearing Referee's decision, in light of facts and circumstances presented to the Board together with

states "The policy of the Authority where employees are convicted of felony requires discharge."

That is a correct statement, again?

A. Yes

McIver Deposition at 30–31.

Mr. McIver discussed the NYCTA's policy in more detail:

Q. Are you familiar with the TA's policy towards employees who are convicted of crimes?

A. Yes.

Q. What is that policy?

A. In general, depending upon the severity of the crime, they would be dismissed.

Q. Do you know what factors are taken into consideration by the TA before terminating the employment of an employee who is convicted of a felony?

A. Generally we would dismiss an employee if he was convicted of a felony, depending on—and you will have to forgive me because I am not converse in criminal law, so the distinctions in terms of what's a major felony and minor felony, that in itself are not legal distinctions that I am making. But if it was a less serious, perhaps not a crime against a person or something like that, then an employee, had a long work record with an exemplary work record and so forth, that may present an extenuating circumstance, depending on the nature of the crime.

McIver Deposition at 9–10.

At no point in McIver's opinion or deposition did he indicate that he considered any factor other than the plaintiff's crime in deciding to discharge the plaintiff. McIver did not review the plaintiff's personnel file

Furst's record of service, the Board strongly urges the Authority to consider reappointment of Mr. Furst, provided however, such reappointment would be without back pay or seniority for the period of his suspension from service.

and did not read the transcript of the § 75 hearing before Referee Gutman. Asked why he disregarded the Board's suggestion that he reinstate the plaintiff, McIver replied:

I thought that, as I recall the case, Mr. Furst had shot his son, pled guilty, been convicted of manslaughter. And I thought in that kind of a situation that regardless of whether he might be a suitable employee somewhere else or not, is not somebody that we should have working at the Transit Authority.

McIver Deposition at 28.

Mr. McIver believed that the NYCTA's policy was necessary to deter Authority employees from committing serious crimes. His deposition reads:

A. ... the reason that I would support a policy like that is that I believe as a public agency that is providing service to the public, that we ought to have a policy, have the right to have clearly understood by our employees, that is the policy, that if they are convicted of a felony, that they would no longer be able to be employed by the Transit Authority. I consider that sort of a fundamental condition of employment in the kind of agency the Transit Authority is.

Q. Just to clarify. In other words, you are telling me that the rationale for this rule basically is that you want the employees of the TA to be aware that if they are convicted of a serious crime—which we are defining as a felony—then they will fact discharge? [sic]

A. Right.

McIver Deposition at 31–32

*Discussion*

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment may be granted when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Battery Steamship Co. v. Refineria Panama, S.A.*, 513 F.2d 735, 738 (2d Cir.1975).

Local governmental units can be sued directly under 42 U.S.C. § 1983 when the action alleged to be unconstitutional implements a municipal policy or custom. *Monell v. Department of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). Municipal liability may be imposed for a single decision by municipal policy makers where a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. *Pembaur v. Cincinnati*, —— U.S. ——, ——, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986), reversing 746 F.2d 337 (6th Cir.1984).

The plaintiff contends that he was dismissed pursuant to the defendant's alleged policy of dismissing all employees who are convicted of felonies and argues that such a policy violates the Equal Protection Clause of the Fourteenth Amendment. The defendant concedes that such a policy would violate the Equal Protection Clause but asserts that it maintains no such policy.

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." The Clause announces a fundamental principle: the state must govern impartially. A city policy or practice that operates to the detriment of a distinct class of individuals is subject to examination under the limitations imposed on local governments by the Clause. *New York City Transit Authority v. Beazer*, 440 U.S. 568, 587–588, 99 S.Ct. 1355, 1366–67, 59 L.Ed.2d 587 (1979); *Monell v. Department of Social Services, supra.*

A challenged policy that does not disadvantage a suspect class and does not interfere with a fundamental right survives scrutiny if the policy is rationally related to a legitimate state purpose or interest. Because public employment is not considered a fundamental right, *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976) and ex-felons do not constitute a suspect class, *Miller v. Carter*, 547 F.2d 1314, 1321

(7th Cir.1977), aff'd 434 U.S. 356 (1978), the defendant's alleged policy is permissible under the Equal Protection Clause if it is rationally related to a legitimate state goal.

In *Kindem v. City of Alameda,* 502 F.Supp. 1108 (N.D.Calif.1980) and *Butts v. Nichols,* 381 F.Supp. 573 (S.D.Iowa 1974), municipal employees were discharged pursuant to policies prohibiting municipal employment of ex-felons. In each case, the courts held that such policies were not rationally related to any legitimate state goal and violated the Equal Protection Clause. The courts rejected the defendants' contention that such policies were necessary to insure that municipal jobs were filled by honest individuals and necessary to preserve public trust in government, finding that the policies were not sufficiently tailored to accomplish these legitimate state goals.[5]

In *Kindem,* the court wrote:

The City unquestionably has a legitimate interest in hiring qualified, competent and trustworthy employees, and in employing persons who will inspire the public's confidence. But it has not been demonstrated that the sole fact of a single prior felony conviction renders an individual unfit for public employment, regardless of the type of crime committed or the type of job sought. This is not to say that a prior felony conviction can never be a factor in public employment

decisions. It is reasonable to assume, for example, that a prior conviction might be highly relevant or properly determinative with respect to hiring decisions involving certain sensitive jobs. It may also be reasonable to assume that convictions for certain crimes may indicate that an individual is unfit for any future municipal employment. But the City's policy is not tailored along any lines to conform to what might be considered legitimate government interests (citations omitted).

502 F.Supp. at 1112.

In *Butts,* the court wrote:

There is no doubt that the state could logically prohibit and refuse employment in certain positions where the felony conviction would directly reflect on the felon's qualification for the job (e.g., conviction of embezzlement and a job requiring the handling of large sums of money). The Iowa statutory scheme, however has an across-the-board prohibition against the employment of felons in civil service positions. There is simply no tailoring in an effort to limit these statutes to conform to what might be legitimate state interests.

381 F.Supp. at 580.

■ Even when prohibiting ex-felons from obtaining or retaining specific forms of employment, a public employer must still satisfy the rational relationship test.[6]

---

**5.** Similar municipal bans on public employment of distinct groups have also failed the rational basis test and have been found to violate the Equal Protection Clause. *See Thompson v. Gallagher,* 489 F.2d 443 (5th Cir.1973) (veterans with less than an honorable discharge) and *Davis v. Bucher,* 451 F.Supp. 791 (E.D.Pa.1978) (former drug users).

**6.** Municipal policies that prohibit ex-felons from obtaining or retaining specific forms of employment fare far better under Equal Protection Clause scrutiny than do policies that prohibit ex-felons from obtaining or retaining any form of public employment. In *Darks v. Cincinnati,* 745 F.2d 1040 (6th Cir.1984), the court upheld the constitutionality of a municipal policy prohibiting the issuance of dance hall licenses to ex-felons. The court, applying the rational basis test to the policy, wrote:

... the city could rationally conclude that denying dance hall licenses to felons would

further the city's legitimate purpose of insuring that dance halls are operated by persons of integrity with respect for the law. A dance hall which serves as a gathering place during late night and early morning hours, could pose a significant threat to the peace of the community if not run by such persons.

745 F.2d at 1043.

The court distinguished the licensing policy from the statutes in *Kindem* and *Butts* by noting that in *Kindem* and *Butts,* the "district court struck down statutes denying any form of civil service employment to convicted felons. The practice questioned here, however, only restricts felons from receiving one type of license which the city has reason to restrict to those of good character." *Id. See also Upshaw v. McNamara,* 435 F.2d 1188 (1st Cir.1970) and *Dixon v. McMullen,* 527 F.Supp. 711 (N.D.Tex.1981) (statutes excluding ex-felons from certification as police officers upheld under the Equal Protection Clause).

In *Smith v. Fussenich,* 440 F.Supp. 1077 (D.Conn.1977), the court held that a Connecticut statute which prohibited ex-felons from obtaining a license to work as private detectives or security guard was violative of the Equal Protection Clause. The court wrote:

> The legislation fails to recognize the obvious differences in the fitness and character of those persons with felony records. Felony crimes such as bigamy and income tax evasion have virtually no relevance to an individual's performance as a private detective or security guard. . . .
>
> Moreover, the statute's across-the-board disqualification fails to consider probable and realistic circumstances in a felon's life, including the likelihood of rehabilitation, age at the time of conviction, and other mitigating circumstances related to the nature of the crime and degree of participation. We believe it is fair to assume that many qualified ex-felons are being deprived of employment due to the broad sweep of the statute.

440 F.Supp. at 1080.[7]

■ The Court is persuaded by the well reasoned opinions of *Kindem* and *Butts* in holding that a municipal policy requiring discharge of ex-felons runs afoul of the Equal Protection Clause. Although the rational relationship test allows a public employer wide discretion in fashioning employment classifications, such a policy is simply too broad to accomplish any legitimate governmental purpose. Before excluding ex-felons as a class from employment, a municipal employer must demonstrate some relationship between the commission of a particular felony and the inability to adequately perform a particular job.

■ The only question remaining before the court is whether or not the plaintiff was discharged pursuant to a NYCTA policy requiring the discharge of ex-felons. Although no statute or ordinance codifies such a policy,[8] it is indisputable that McIver, the Board and Referee Gutman, who had decision making responsibility in the plaintiff's case, explicitly acknowledged that the NYCTA maintained a policy requiring the discharge of those convicted of felonies or "serious crimes"[9] and believed that such a policy mandated the plaintiff's discharge. *See* Gutman Decision at 3, Board Decision at 2, McIver Deposition at 9–10, 29–31 and Buchanan Deposition at 44–46. Moreover, with the exception of the Board's ambiguous suggestion that the plaintiff be exempted from such a policy because of his employment record and the circumstances of his crime, no inquiry was made as to whether the plaintiff's particular crime impeded his ability to effectively serve as a surface line dispatcher. I conclude, therefore, that the plaintiff was discharged pursuant to a policy requiring the discharge of ex-felons and that such a policy is actionable under 42 U.S.C. § 1983 and is violative of the Equal Protection Clause.[10]

It is important to emphasize the narrow scope of the court's holding. The plaintiff

---

7. In *Schanuel v. Anderson,* 708 F.2d 316 (7th Cir.1983), the court upheld the constitutionality of an Illinois statute that prohibited licensed private detective agencies from employing convicted felons for a period of ten years following the discharge of sentence, as armed guards or investigators. The court noted that unlike the statute at issue in *Butts,* the Illinois statute did not contain an across-the-board ban on municipal employment of ex-felons, and unlike the statute at issue in *Smith,* the Illinois statute did not create a permanent bar to employment.

8. Rule 35 of the NYCTA Rules grants the NYCTA broad discretion in disciplining employees who violate NYCTA Rules.

9. It makes no difference, on a constitutional level, whether the NYCTA's policy is defined as requiring the discharge of ex-felons or is defined as requiring the discharge of those who commit an undefined group of "serious crimes." Both formulations are overbroad and not rationally related to any legitimate governmental purpose.

10. The plaintiff also contends that his dismissal violated the Due Process Clause of the Fourteenth Amendment as well as various provisions of New York state law. Because I find that the plaintiff was discharged pursuant to a policy that violates the Equal Protection Clause, it is unnecessary to rule on the plaintiff's other claims.

has not proffered the name of any NYCTA employee who was dismissed because he or she had committed a felony and the defendant, in response to an interrogatory, could not identify a single employee who had been reinstated by the NYCTA after committing a felony.[11] Thus, I find only that this plaintiff was discharged pursuant to an unconstitutional NYCTA policy existing at the time of his discharge. I make no determination as to whether such a policy exists today or as to whether other NYCTA employees have been dismissed pursuant to such a policy.

The plaintiff's motion for summary judgment is granted and the defendant's cross-motion for summary judgment is denied.[12]

11. In Paragraph 2A of the plaintiff's Demand for Production of Documents, the plaintiff asked the defendant to provide the names of any NYCTA employees who since 1980 had been "convicted of having committed one or more felonies, who were either not discharged by the TA following such conviction or who were discharged but subsequently reinstated by the TA following such conviction." The defendant replied "None."

Despite the defendant's response to the plaintiff's interrogatory, it now claims that in 1981, Bus Operator Rosario Sinacori, an employee of the NYCTA, pled guilty to a charge of embezzlement under 18 U.S.C. § 657 and was subsequently reinstated following suspension. The defendant also notes that in November 1985, the NYCTA retained employee Kenneth Jackson, despite his guilty plea to attempted criminal possession of a weapon in the third degree, a Class E felony.

Neither the Sinacori nor Jackson decisions alter the court's conclusion that the NYCTA, in adjudicating the plaintiff's case, operated under a policy prohibiting the continued employment or reinstatement of ex-felons.

12. Rule 3(g) of the Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York states:

(g) Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement constitutes grounds for denial of the motion.

The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.

All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

The defendant did not submit a 3(g) statement in support of its cross-motion or in opposition to the plaintiff's motion. Such an omission provides an independent ground for denying the defendant's cross-motion and for finding that the defendant has admitted the truth of paragraph 15 of the plaintiff's 3(g) statement, which asserted:

The TA maintains and enforces a blanket policy requiring the dismissal of any employee convicted of a felony. Such policy resulted in the dismissal of plaintiff Furst despite his unblemished 17 year record of service to the TA.