Cary Joel HELLER, Plaintiff,

v.

Ken ROSS, in his official capacity as Commissioner of the Office of Financial and Insurance Regulation for the State of Michigan, Defendant.

Case No. 09–10203.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 14, 2010.

Matthew F. Leitman, Miller Canfield Paddock & Stone, PLC, Troy, MI, for Plaintiff.

Michael P. Farrell, MI Dept. of Attorney General, Lansing, MI, for Defendant.

### OPINION AND ORDER

### DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS[9]

### GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS [11] and DISMISSING THE CASE

ARTHUR J. TARNOW, District Judge.

In this case, plaintiff Cary Joel Heller ("Plaintiff") presents facial and as-applied challenges to the constitutionality of the Michigan Insurance Code's Licensing Statute, MCL 500.1205.

The Court has reviewed the record, considered the parties' briefs and supplemental authority, and heard oral arguments on the motions. In light of controlling Sixth Circuit precedent and for the reasons set forth below, the Court concludes that Plaintiff's Motion for Judgment on the Pleadings [9] must be DENIED, Defendant's Motion for Judgment on the Pleadings [11] must be GRANTED, and the case must be DISMISSED.

### I. INTRODUCTION

For purposes of the pending cross-motions for judgment on the pleadings, the parties have stipulated to the facts of this case. Plaintiff was born one of three triplets, and endured a difficult family life growing up in West Bloomfield, Michigan. His father suffered from poor health, and his mother suffered from bi-polar disorder and substance addictions. When Plaintiff was eighteen years old, his father died, and his mother died when Plaintiff was twenty-one. Plaintiff began using drugs as a high school student, and was addicted to heroin by the age of twenty-four.

Plaintiff began growing and selling marijuana to fund his heroin purchases, but stopped when he entered drug treatment in 2004. During treatment, he conquered his addiction, embraced his faith, and spent his free time doing volunteer work with special-needs children. Plaintiff has not returned to drug use, and stayed sober while grieving the recent suicide of his triplet brother.

In 2005, Plaintiff faced federal criminal charges based on his prior activities. He pled guilty to one count of conspiracy to

manufacture and distribute marijuana. In an extreme downward departure from both the federal sentencing guidelines and the range suggested in the plea agreement, the sentencing judge placed Plaintiff on six months of house arrest.

Since 2006, Plaintiff has worked at Invescor, a Farmington Hills-based company that provides insurance-related services. Plaintiff's job involves educating financial professionals and insurance agents about the life insurance settlement industry. He has earned several promotions within the company.

On April 1, 2008, Plaintiff applied for a Resident Producer License ("RPL"), which is required under Michigan law in order for a person to sell certain insurance products. On his RPL application, Plaintiff acknowledged his felony conviction. Plaintiff's application was reviewed by the Office of Financial and Insurance Regulation for the State of Michigan ("OFIR"), which oversees financial and insurance regulatory matters throughout the state. Without considering Plaintiff's personal circumstances, OFIR rejected Plaintiff's RPL application solely on the basis of his prior felony conviction. Plaintiff appealed OFIR's decision to defendant Ken Ross ("Defendant"),[1] who agreed that the applicable statute, MCL 500.1205 (the "Licensing Statute"), prohibits Plaintiff from obtaining a RPL.

## II. *THE LICENSING STATUTE*

The requirements for licensing resident producers are embodied in Michigan's Insurance Code. *See* MCL 500.1205. The relevant statute provides:

(1) A person applying for a resident insurance producer license shall file with the commissioner the uniform application required by the commissioner and shall declare under penalty of refusal, suspension, or revocation of the license that the statements made in the application are true, correct, and complete to the best of the individual's knowledge and belief. An application for a resident insurer producer license shall not be approved unless the commissioner finds that the individual meets all of the following:

\* \* \*

(b) Has not committed any act listed in section 1239(1).

*Id.* The Insurance Code then sets forth the acts that constitute grounds for the discipline of a licensed producer, or for the denial of a license to a new applicant. MCL 500.1239(1). One of those grounds is "[h]aving been convicted of a felony." MCL 500.1239(1)(f).

Thus, in mandatory language, the statute facially prohibits the Commissioner from granting a license to an applicant who has been convicted of a felony.

## III. *LEGAL ARGUMENTS*

After exhausting all potential administrative remedies, Plaintiff filed this action on January 20, 2009. Plaintiff seeks relief in the form of: (1) a declaration that the Licensing Statute, both facially and as applied to him, violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, and; (2) an injunction preventing Commissioner Ross from applying the Licensing Statute to Plaintiff's RPL application, and requiring the Commissioner instead to evaluate the application under the general standards governing RPL applicants. Now pending

---

1. Individual defendant Ken Ross is the Commissioner of OFIR, and is sued here in his official capacity.

before the Court are the parties' cross-motions for judgment on the pleadings. The Court heard argument on the motions.

Plaintiff asserts that the Licensing Statute bears no rational relationship to a legitimate state interest,[2] and therefore does not withstand scrutiny under the Equal Protection Clause of the Fourteenth Amendment. He identifies three respects in which he claims the Licensing Statute draws irrational and arbitrary classifications, and thus is facially unconstitutional. Additionally, Plaintiff argues that the statute is unconstitutional as applied to the unique facts of his case.

### A. FACIAL CONSTITUTIONALITY

Plaintiff argues that the Licensing Statute is facially unconstitutional in three respects: (I) it draws an irrational line between RPL applicants and current RPL holders; (ii) it is irrationally overinclusive because it denies a RPL to any convicted felon, without regard for the nature of the underlying offense, and; (iii) it draws an irrational line between felony and misdemeanor convictions.

### I. THE APPLICANT/LICENSEE DISTINCTION

Plaintiff's primary argument is that the Licensing Statute is facially unconstitutional insofar as it mandates that OFIR deny a RPL license to any applicant with a felony conviction, but affords OFIR discretion to disregard an identical felony conviction incurred by an individual who already holds a RPL. Plaintiff asserts that this distinction bears no rational relationship to the state's presumptively legitimate inter-

est in "protecting [the public] against unscrupulous insurance agents." In support, Plaintiff presents several sources of persuasive authority in which courts have struck down statutory prohibitions against the professional licensing of convicted felons. Plaintiff further urges the Court to distinguish the present case from the Sixth Circuit's 1984 holding in *Darks v. Cincinnati. See* 745 F.2d at 1044.

In *Miller v. Carter,* a seminal case on this issue, the Court of Appeals for the Seventh Circuit struck down as unconstitutional a City of Chicago licensing ordinance that distinguished between applicants and licensees with felony convictions, holding that:

> [D]istinctions among those members of the class of ex-offenders are irrational, regardless of the importance of the public safety considerations underlying the statute or the relevance of prior [offenses] to fitness ... [a]n applicant for a license who has committed one of the described felonies and a licensee who has done the same are similarly situated, and no justification exists for automatically disqualifying one and not the other.

547 F.2d 1314, 1316 (7th Cir.1977), *aff'd by an equally divided Court,* 434 U.S. 356, 98 S.Ct. 786, 54 L.Ed.2d 603 (1978). In so holding, the Seventh Circuit explicitly rejected the defendant City's proposed "rational basis" justification that individuals convicted of a felony *after* being licensed "have a 'track record' [in employment] that the commissioner and mayor can balance against the felony in evaluating fitness." *Id.* The court noted that, under the Chica-

---

**2.** If a statute does not invoke or create a "suspect class," it must meet only the deferential "rational basis" test to withstand equal protection analysis. *See City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). "There is a rational basis for a governmental classification if the distinctions made by that classifica-

tion 'have some relevance to the purpose for which the classification is made.' " *Darks v. Cincinnati,* 745 F.2d 1040, 1042–43 (6th Cir. 1984) (quoting *Marshall v. United States,* 414 U.S. 417, 422, 94 S.Ct. 700, 38 L.Ed.2d 618 (1974)). Here, the parties do not dispute the applicability of this standard.

go ordinance it found to be irrational, the applicant was "absolutely barred from obtaining a license, although he was convicted of armed robbery over eleven years ago, while someone who already holds a license may be permitted to retain it, although convicted of armed robbery only yesterday." *Id.*

In *Lewis v. Alabama Department of Public Safety,* a federal district court cited *Miller* in evaluating an administrative regulation that prevented the Alabama State Police from hiring tow truck drivers who had been convicted of certain offenses. 831 F.Supp. 824, 828 (M.D.Ala.1993). The State Police enforced the regulation against applicants, but no comparable provision affected drivers who were hired before committing their offenses. The *Lewis* court found that any "legitimate reason for [the] regulation [was] undercut" by the distinction imposed between applicants and licensees. *Id.*

Finally, in *Nixon v. Commonwealth of Pennsylvania,* the Pennsylvania Supreme Court struck down as irrational a statute that required a person seeking to provide services to vulnerable senior citizens to submit to a criminal records check only if the caregiver had been providing those services for less than a year. 576 Pa. 385, 839 A.2d 277, 290 (2003). Under the statute, an applicant would be rejected if the records check revealed a conviction for specified crimes, while a caregiver with more than one year of employment history could continue to provide services even if he or she had been convicted of the same offenses. The *Nixon* court speculated that the state legislature's "only conceivable explanation for the distinction" could have been that those caregivers with more than a year of employment history "presented less of a risk because they had proven that they were not likely to harm the patient population and had established a degree of

trust with their patients and management." *Id.* at 289. However, the court rejected that rationale, noting that "if convicted criminals [with more than a year of work history] were capable of essentially rehabilitating themselves [so as to qualify for continued employment], ... there should be no reason why other convicted criminals were not, and are not, also capable of doing the same." *Id.*

In contrast to the foregoing cases, the Sixth Circuit has upheld the constitutionality of a City of Cincinnati ordinance that barred convicted felons from obtaining a license to operate a dance hall. *See Darks,* 745 F.2d at 1044. In its equal protection analysis, the court reasoned that "the city could rationally conclude that denying dance hall licenses to felons would further the city's legitimate purpose of insuring that dance halls are operated by persons of integrity with respect for the law." *Id.* at 1043. As an "additional rational basis" supporting the city's practice, the court cited a related municipal ordinance providing for the mandatory revocation of a city license upon the holder's conviction of "a misdemeanor or felony involving moral turpitude." *Id.* The *Darks* court interpreted the revocation provision as evidence of the city's "desire to treat offenders the same irrespective of the date of their conviction." *Id.* (contrasting Cincinnati's revocation provision to the Chicago ordinance that was held unconstitutional in *Miller* for making an irrational distinction between applicants and licensees).

■ Plaintiff attempts to distinguish the *Darks* ordinance from the Licensing Statute at issue here, asserting that the *Darks* ordinance "did not distinguish between license applicants with felony convictions and [licensees] who committed felonies." Rather, Plaintiff argues that the Sixth Circuit approved the *Darks* licensing scheme

primarily because it was rational insofar as it "treat[ed] offenders the same irrespective of the date of their conviction." *See id.* at 1043.

Defendant contends that Plaintiff's "argument [regarding the differential treatment of applicants and existing licensees] relies on a misinterpretation" of the *Darks* opinion. Defendant argues that "[Plaintiff's] claim that the ordinance in the *Darks* case did not distinguish between applicants and licensees is simply wrong"; indeed, both the *Darks* ordinance and the Michigan Licensing Statute would deny the applications of *all* convicted felons. Furthermore, Defendant notes that both regulations authorize the revocation of an existing permit upon a licensee's subsequent conviction: the *Darks* ordinance provides for mandatory revocation if a licensee is convicted of any crime of "moral turpitude," whether a felony or a misdemeanor, and the Licensing Statute authorizes revocation purely as a function of the Commissioner's discretion.

■ The Court finds that the Sixth Circuit's *Darks* decision is applicable here, and must control the analysis of the Michigan Licensing Statute. Decided in 1984, *Darks* was argued relatively early in the series of matters in which "[c]ourts and commentators have sought to reconcile the disparate cases concerning record-based disqualifications." *See* Miriam J. Aukerman, *The Somewhat Suspect Class: Towards a Constitutional Framework for Evaluating Occupational Restrictions Affecting People With Criminal Records,* 7 J.L. Society 18, 47 (2005) (collecting cases).

In the early absence of what is now a diversity of case law, the Sixth Circuit's discussion in *Darks* was correspondingly brief. To withstand scrutiny under the Equal Protection Clause, a regulation that imposes disparate treatment must bear "a rational relationship [to] some legitimate governmental purpose." *Heller v. Doe,* 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). The *Darks* holding was based squarely on the court's finding of the existence of a legitimate governmental purpose, and included only a limited mention of the applicant/licensee distinction that would go towards establishing whether the *Darks* ordinance was indeed rationally related to that state interest.

Regarding the existence of a legitimate state interest, *Darks* held that "[Cincinnati] ha[d] a rational basis for denying dance hall licenses to convicted felons, and thus that this practice [did] not violate the [E]qual [P]rotection [C]lause." 745 F.2d at 1040. The extent of the government interest articulated to justify the ordinance was: "the city's legitimate purpose of insuring that dance halls are operated by persons of integrity with respect for the law." *Id.* at 1043. Contrasting *Darks* to cases that involve "particularly strong" state interests, such as restricting convicted felons' access to firearms, the Sixth Circuit noted that "a dance hall license would seem to involve the same concerns, although possibly not to the same degree,"[3] and affirmed the legitimacy of the government interest at issue. *Id.* at 1043. Here, by comparison, Defendant has detailed the job functions and statutorily-

---

**3.** Commentators have noted that such reasoning produces a slippery slope. "Precisely because there are legitimate governmental interests at stake in the regulation of *every* occupation, it is easy to conclude, when analyzing just one industry, that the particular occupation is so important that people with records should be excluded from it.." However, such justifications are "infinitely expandable," and, "taken cumulatively, function to exclude persons with criminal convictions from large segments of the job market." *See* Aukerman, *supra,* at 48–49 (emphasis added) (internal citation omitted).

imposed fiduciary duties of insurance producers,[4] and argues that "it is rational to conclude that applicants who have been convicted of felonies are more likely to violate their legal, and fiduciary, obligations to their clients." Without opining as to the likelihood that individuals with felony convictions, as a broad class, are truly particularly apt to violate assumed fiduciary duties, the Court finds that, here, Defendant has articulated a legitimate state interest that meets or surpasses the threshold set in *Darks*.

Even presuming the existence of the state's legitimate interest in "protecting against unscrupulous insurance agents," Plaintiff objects that the imposition of a distinction between applicants and licensees defeats any rational relationship that might otherwise connect that state interest to the Michigan Licensing Statute. Specifically, Plaintiff argues that "[t]here is no rational basis on which to conclude that a license holder with a felony conviction is somehow less of a threat to the public than a license applicant with the same felony conviction." As noted above, Plaintiff's position is directly supported by the case law of a number of districts. *See Miller*, 547 F.2d at 1316; *Lewis*, 831 F.Supp. at 828; *Nixon*, 839 A.2d at 289. However, the Sixth Circuit's treatment of the argument is confined to dicta in the *Darks* opinion, wherein the court described "the desire to treat offenders the same irrespective of the date of their conviction" as "an *additional* rational basis" that tended to justify the dance hall licensing ordinance. *See* 745 F.2d at 1043 (emphasis added).

Because the *Darks* court did not conduct a searching analysis of the applicant/licensee distinction under the "rational relationship" prong of its equal protection review, and nor did its holding rest upon that distinction, this Court can logically infer only that the Sixth Circuit has validated an ordinance—much like the statute in this case—that categorically denies licenses to all applicants with felony records, notwithstanding the regulation's differential treatment of licensees who are subsequently convicted of felonies. The relevant provisions of the *Darks* ordinance and the Licensing Statute can be summarized as follows:

|  | *Darks* Ordinance | Licensing Statute |
|---|---|---|
| Treatment of Applicants | All applicants with felony convictions denied. *See Darks*, 745 F.2d at 1042–43. | All applicants with felony convictions denied. See MCL 500.1205. |
| Treatment of license holders upon conviction | Mandatory license revocation upon the licensee's conviction of a misdemeanor or felony involving moral turpitude. *See Darks*, 745 F.2d at 1043. | Discretionary license revocation (or discretionary imposition of other discipline) upon the licensee's conviction of a felony. *See* MCL 500.1239(1)(f). |

The *Darks* ordinance imposes differential treatment that favors the licensing interests of a defined subclass of convicted felons: those convicted of a felony *not* involving "moral turpitude" are permitted to keep their licenses, while license revocation is automatic for all others. Although in practical application, the regulation's classifications may differentially affect relatively few licensees, it is clear that the *Darks* ordinance validated by the Sixth Circuit treats applicants and licensees unequally. Similarly, the Michigan Licensing Statute imposes differential treatment

---

**4.** Insurance producers are licensed to "sell, solicit or negotiate insurance," and RPL holders act as intermediary agents in dealings between the insurance company and the consumer. *See* MCL 500.1201 a; MCL 500.1208a. Furthermore, producers have fiduciary obligations to collect and hold client funds, to identify and recommend suitable annuities to clients, and to offer clients the lowest rate available among potential insurers, even when a higher-priced product would pay a higher commission to the producer. *See* MCL 500.1207; MCL 500.2116(1)(a); MCL 500.4155.

that potentially disfavors license applicants with existing felony records, as compared to licensees who later incur felony convictions.

The Court must reluctantly conclude that, by logical implication if not by direct analysis, the *Darks* holding defeats Plaintiff's argument regarding the constitutionality of the applicant/licensee classification created by the Michigan Licensing Statute.

## II. OVERINCLUSIVITY

Next, Plaintiff argues that the Licensing Statute is facially overinclusive because it denies a RPL to *any* convicted felon, without regard for the nature of the underlying offense. Plaintiff argues that some felonies (e.g. embezzlement, larceny, or perjury) bear directly on a person's fitness to hold a position of trust, while other felonies ("failing to properly dispose of a dead body after 180 days and engaging in a duel") do not. Arguing that the Equal Protection Clause requires a more narrowly tailored review of the "relationship between the commission of a particular felony and the inability to adequately perform a particular job," Plaintiff cites several federal district court cases striking down blanket bans on the employment of convicted felons. *See, e.g., Furst v. New York City Transit Auth.*, 631 F.Supp. 1331, 1336–38 (S.D.N.Y.1986) (collecting cases).[5] Plaintiff further points out that a Michigan statute explicitly states that licensing boards or agencies are generally not to use a felony conviction, "in and of itself" as "proof of a person's lack of good moral character." *See* M.C.L. § 338.42 (the Oc-

cupational Licensing of Former Offenders Act ("OLFOA")). The cited statute provides that such a conviction "may be used as evidence in the determination [of character], and when so used the person shall be notified and shall be permitted to rebut the evidence." *Id.* Finally, Plaintiff argues that the Licensing Statute's "lifetime ban—i.e. that a convicted felon always poses a materially higher risk of re-offending than a person with no record"—is inconsistent with the findings of recidivism research.

Defendant argues that the "blanket ban" cases are inapposite here, citing "[n]umerous other cases [that] have ... upheld licensing provisions dealing with sensitive [occupations]." Defendant acknowledges OLFOA, cited in Plaintiff's brief, but argues that "the fact the Legislature has chosen to use a more stringent standard in the licensing of insurance producers does not violate Equal Protection. It is simply a reflection of a legislative determination that insurance producers, as a profession, merited more ... scrutiny."

As to the applicability of the "blanket ban" cases, the Court again refers to *Darks*. The *Darks* plaintiff had cited two cases in which federal district courts invalidated "statutes denying any form of civil service employment to convicted felons." *See* 745 F.2d at 1043 (citing *Kindem v. City of Alameda*, 502 F.Supp. 1108 (N.D.Cal.1980); *Butts v. Nichols*, 381 F.Supp. 573 (S.D.Iowa 1974)).[6] In response, the Sixth Circuit distinguished those cases, noting that the ordinance chal-

---

5. Not all of the cited cases address professional licensing provisions; some deal with more general bans barring the employment of convicted felons.

6. The Court notes that, here, the parties have not elaborated on the potential distinction between the "civil service" or "public sector" employment specifically at issue in the cited

cases, and the private employment by a corporation that is at issue here. *Cf. Furst*, 631 F.Supp. at 1337 (analyzing *Kindem* and *Butts* and discussing whether the applicable policies, in which ex-felons were barred from municipal employment, were "necessary to preserve public trust in government").

lenged in *Darks* "only restricts felons from receiving one type of license, which the city has reason to restrict to those of good character." *Id.* The "blanket ban" distinction adopted by the *Darks* court was also recognized in *Furst,* cited in Plaintiff's motion. *See Furst,* 631 F.Supp. at 1337 n. 6 ("Municipal policies that prohibit ex-felons from obtaining or retaining specific forms of employment fare far better under Equal Protection Clause scrutiny than do policies that prohibit ex-felons from obtaining or retaining any form of public employment.") (citing *Darks,* 745 F.2d at 1043); *see also* Aukerman, *supra,* at 48 (noting that one "approach to reconciling the cases respectively upholding and invalidating record-based occupational restrictions is to distinguish between blanket bans affecting a wide range of jobs, versus those tied to particular professions").

The Court notes that, here, the thrust of the cited case law discussing "blanket bans" is not accurately captured by Plaintiff's reference to the Licensing Statute's "blanket prohibition against all felons." Rather, the Michigan Licensing Statute is comparable to the validated *Darks* ordinance insofar as it applies *only* to would-be resident producers within the insurance industry; that is, it "only restricts felons from receiving one type of license." *See Darks,* 745 F.2d at 1043.

Furthermore, unlike other jurisdictions, the Sixth Circuit has not required that the statute in question articulate a narrowly-tailored link between the occupation at issue and specific disqualifying offenses. *Cf.* Aukerman, *supra,* at 44–45 (collecting cases). Instead, the *Darks* court found it permissible for Cincinnati to deny dance hall operator licenses to all applicants with felony records, without regard to the nature of the underlying convictions. *See* 745 F.2d at 1043–44. Following *Darks,* this Court must conclude that the Licensing Statute withstands an overinclusivity challenge, despite the statute's indiscriminate inclusion of all convicted felons within its sweep.

Finally, the Court has reviewed OL-FOA, and in particular, the Michigan statutory provision declaring that licensing agencies generally should not use a felony conviction, "in and of itself," as "proof of a person's lack of good moral character." *See* M.C.L. § 338.42(1). The full text of the provision cited by Plaintiff reads as follows:

A judgment of guilt in a criminal prosecution or a judgment in a civil action shall not be used, in and of itself, by a licensing board or agency as proof of a person's lack of *good moral character.* It may be used as evidence in the determination, and when so used the person shall be notified and shall be permitted to rebut the evidence by showing that at the current time he or she has the ability to, and is likely to, serve the public in a fair, honest, and open manner, that he or she is rehabilitated, or that the substance of the former offense is not reasonably related to the occupation or profession for which he or she seeks to be licensed.

*Id.* (emphasis added).

Reference to the immediately preceding section of the Michigan Code, M.C.L. § 338.41 ("Definitions"), demonstrates that the phrase "good moral character" is to be construed within a particular context. Specifically, the "Definitions" section states that: "[t]he phrase "good moral character", or words of similar import, *when used as a requirement for an occupational or professional license* ... shall be construed to mean the propensity on the part of the person to serve the public in the licensed area in a fair, honest, and open manner." M.C.L. § 338.41 (emphasis added).

Here, the language of the Michigan Licensing Statute does not, in the first place, invoke "good moral character" as a licensing requirement. *See* MCL 500.1205; MCL 500.1239(1). Thus, the Court finds that the cited provision of OLFOA is inapplicable here, and should not be imported into the analysis.

### III. THE FELONY/MISDEMEANOR DISTINCTION

Next, Plaintiff argues that the Licensing Statute arbitrarily distinguishes between felony and misdemeanor convictions. Plaintiff cites case law holding that statutes are "both over and underinclusive" where "persons who clearly could serve the public interest [i.e., felony offender[s] whose convictions bear no relationship to their fitness for public work] are denied [jobs] while misdemeanants convicted of crimes indicating a lack of probity suffer no disqualification." *See, e.g., Kindem,* 502 F.Supp. at 1112; *Smith v. Fussenich,* 440 F.Supp. 1077, 1079 (D.Conn.1977); *Butts,* 381 F.Supp. at 581.

■ This argument presents again, in different form, the question of how narrowly tailored statutory language must be to survive scrutiny under the Equal Protection Clause. Following *Darks,* the Court surmises that the Sixth Circuit would not require Michigan to accord equal treatment to felons and misdemeanants within its professional licensing scheme. As the *Darks* opinion noted, "[t]he case law clearly indicates that at least some purposes will entitle a state or its subdivision to separately classify those convicted of a felony." 745 F.2d at 1043. Furthermore, Defendant argues that "[f]elonies are crimes that society, through the legislative process, has decided are more serious," and that here, "[t]he decision to be less stringent in the treatment of misdemeanants" in the licensing process is merely a legislative decision "about how

far to extend the prohibition against licensing ex-offenders."

The Court accepts Defendant's argument on this point, and holds that the Licensing Statute is not unconstitutionally arbitrary in distinguishing between felony and misdemeanor convictions. A "statute is not invalid under the Constitution because it might have gone farther than it did." *Katzenbach v. Morgan,* 384 U.S. 641, 657, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966) (internal citation omitted).

### B. AS-APPLIED CONSTITUTIONALITY

■ Finally, Plaintiff argues that the arbitrariness of the statute is even clearer when applied to him. By all accounts, Plaintiff has transformed his life, and he argues that his five-year-old felony conviction "does not suggest that there is an appreciable risk that he would again violate the law." In his as-applied challenge, Plaintiff maintains that the Licensing Statute is unconstitutionally irrational in precluding OFIR from considering his unique personal circumstances in the evaluation of his RPL application. He urges the Court not to "ignor[e] the clear evidence that he will not resume using heroin," and proposes that the proper inquiry is not "whether [Plaintiff] should, in fact, be granted a license," but rather, "the question is whether it is rational to refuse even to consider [Plaintiff's] application."

Respectfully, Defendant notes that "[Plaintiff]'s current sobriety does not change the undisputed facts that he is a heroin addict and when actively using, he has shown a willingness to do anything, including turn to crime, to fund his addiction." Defendant suggests that, if Plaintiff were a licensed insurance producer at the time of a relapse, he would have ready means to obtain funds from his clients in any number of ways. Because rational basis review requires only that there

might exist some set of facts that could provide a rational basis for excluding Plaintiff from licensure, Defendant argues that the reasonably conceivable possibility of Plaintiff's relapse into addiction provides a sufficient basis for denying his application under the statute. *See Heller*, 509 U.S. at 320, 113 S.Ct. 2637 ("[A] classification 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.' ") (quoting *F.C.C. v. Beach Commc'ns*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)).

Plaintiff's as-applied challenge to the Licensing Statute's constitutionality is subject to the same rational basis review as his facial challenge. As the Sixth Circuit has recently reiterated:

> "[r]ational basis review begins with a strong presumption of constitutional validity," and "[i]t is [Plaintiff]'s burden to show that the law, as-applied, is arbitrary; and not the government's to establish rationality." ... Moreover, "[u]nder rational basis review, differential treatment must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."

*Graham v. Mukasey*, 519 F.3d 546, 551 (6th Cir.2008) (internal citations omitted).

With due acknowledgment of Plaintiff's admirable success in his process of recovery from addiction, the Court finds that, given the factual history of this case, Defendant has adequately articulated a "reasonably conceivable state of facts that could provide a rational basis for the classification" at issue, thus satisfying the minimal threshold to defeat an as-applied challenge. *See id.*

## IV. CONCLUSION

Although the Michigan Licensing Statute may operate unfairly upon Plaintiff, in light of existing Sixth Circuit precedent, the Court cannot hold that it operates unconstitutionally. Those remedies that may lie in the appellate or political processes might further not only Plaintiff's interests, but also the continued legislative consideration of the licensing of insurance producers in Michigan, and the development of Sixth Circuit jurisprudence regarding the employment and occupational licensing of individuals with prior felony convictions.

For the reasons discussed above, and the Court being fully advised in the premises, Plaintiff's constitutional challenges to the Michigan Insurance Code's Licensing Statute, MCL 500.1205, must be denied in all respects. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Judgment on the Pleadings [9] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Judgment on the Pleadings [11] is **GRANTED**.

The case is hereby **DISMISSED**.

**SO ORDERED.**